**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION - CLEVELAND**

| | |
|---|---|
| RANNA ZABOURA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION; TOYOTA MOTOR NORTH AMERICA, INC.; TOYOTA MOTOR SALES, U.S.A., INC.; TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.; TOYOTA MOTOR MANUFACTURING CANADA INC.; AAG-CLEVELAND, L.L.C. d/b/a METRO LEXUS; METRO LEXUS; and MEDICAL MUTUAL OF OHIO,<br><br>Defendants. | CASE NO. __________<br><br>JUDGE __________<br><br>(Removed from the Court of Common Pleas of Cuyahoga County, Ohio, Case No. CV 26 146579) |

**<u>NOTICE OF REMOVAL</u>**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Toyota Motor North America, Inc. ("TMNA"), Toyota Motor Sales, U.S.A., Inc. ("TMS"), and Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") (collectively, "Removing Defendants" or the "Toyota Defendants"), through undersigned counsel and with reservation of all rights, hereby remove this case from the Court of Common Pleas of Cuyahoga County, Ohio, to the United States District Court for the Northern District of Ohio, Eastern Division.

Removing Defendants set forth below a short and plain statement of the grounds for removal:[1]

[1]By removing this action to this Court, Removing Defendants do not waive any defenses, objections, or motions available under state or federal law. Removing Defendants expressly reserve the right to move for dismissal of some or all of Plaintiffs' claims and/or seek dismissal

1. This Court has original jurisdiction under 28 U.S.C. §§ 1332 and 1441 *et seq*. Once the parties are aligned according to their true interests and the fraudulently joined dealership is disregarded, complete diversity of citizenship exists, and it is facially evident from the Complaint that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Two alleged Ohio defendants appear in the caption, but neither defeats jurisdiction nor triggers the forum-defendant rule of 28 U.S.C. § 1441(b)(2).

3. First, Defendant Medical Mutual of Ohio ("Medical Mutual"), which Plaintiffs concede is "named solely so that its claimed subrogation interest in any recovery may be determined in this action" (Compl. ¶ 10), shares Plaintiffs' interest in obtaining recovery from the Toyota Defendants and must be realigned as a plaintiff. *See City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941) ("It is our duty, as it is that of the lower federal courts, to look beyond the pleadings, and arrange the parties according to their sides in the dispute."); *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992) ("[T]he courts, not the parties, are responsible for aligning the parties according to their interests in the litigation." (quotation and citation omitted)).

4. Second, upon information and belief, Defendant AAG-Cleveland, L.L.C. d/b/a Metro Lexus (together with its trade name, Defendant "Metro Lexus," the "Dealership") is, and at the time the Complaint was filed was, a Delaware corporation with its principal place of business in Houston, Texas. As such, it is not a forum defendant as pled in the Complaint. Moreover, even if it were an Ohio resident for jurisdictional purposes, it has been fraudulently joined because

---

for lack of personal jurisdiction, insufficient process or service of process, improper venue, or under the doctrine of forum non conveniens.

Plaintiffs have no "colorable cause of action" against it under Ohio law. *See Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009).

## I. THE STATE COURT ACTION

5. On September 14, 2026, Plaintiffs Ranna Zaboura and George Zaboura filed this action in the Court of Common Pleas of Cuyahoga County, Ohio, bearing Case Number CV 26 146579.

6. This action arises from an incident that occurred on December 17, 2024, in the parking lot of the Giant Eagle grocery store in Strongsville, Ohio. (Compl. ¶ 60.)

7. Plaintiffs allege that the 2020 Lexus RX350 (the "Vehicle"), driven by Ms. Zaboura, detected an object and stopped the vehicle. After turning off the Parking Support Brake system, Ms. Zaboura unbuckled her seatbelt, opened the driver's door, and stepped out without moving the gear selector to Park; the Vehicle—still running and in Reverse—moved backward and ran over her. (*Id.* ¶¶ 2–3, 60–68.) Plaintiffs' central theory is that Toyota designed the Vehicle without a default automatic parking-brake or shift-to-Park safeguard upon driver exit. (*Id.* ¶¶ 4-8, 46-59, 109.)

8. Plaintiffs assert claims against Toyota Defendants under the Ohio Products Liability Act for defective design, defective manufacture, inadequate warning, and nonconformance with representations (Compl. ¶¶ 100–112); against the Dealership as a "supplier" under Ohio Revised Code § 2307.78 (*id.* ¶¶ 113–119); for loss of consortium (*id.* ¶¶ 120–122); for punitive damages under Ohio Revised Code § 2307.80 (*id.* ¶¶ 123–125); and, against Medical Mutual only, for a declaration regarding Medical Mutual's claimed subrogation and reimbursement interest in any recovery (*id.* ¶¶ 126–131).

## II. REMOVING DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

9. The Complaint was served on TMNA on September 22, 2026, on TMS on September 22, 2026, and on TEMA on September 21, 2026. To the knowledge of Removing Defendants, as of the filing of this Notice, Toyota Motor Corporation ("TMC") and Toyota Motor Manufacturing Canada Inc. ("TMMC") – which Plaintiffs state must be served through the Hague Service Convention (Compl. ¶ 34) – have not yet been served.

10. This Notice of Removal is filed within 30 days of service on the first-served Removing Defendant and within one year of the commencement of the action. Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b), (c)(1), and Fed. R. Civ. P. 6(a)(1)(C).

11. The Court of Common Pleas of Cuyahoga County, Ohio, is located within the United States District Court for the Northern District of Ohio, Eastern Division. Venue is thus proper pursuant to 28 U.S.C. § 115(a)(1) because this is the "district and division embracing the place where such action is pending," 28 U.S.C. § 1441(a). *See also* LR 3.8.

12. All properly joined and served defendants – TMNA, TEMA, and TMS – consent to removal. 28 U.S.C. § 1446(b)(2)(A).

13. Removing Defendants need not obtain the consent of the Dealership because, as demonstrated below, it has been fraudulently joined in this action. *See, e.g.*, *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999); *Smith v. Wyeth, Inc.*, 488 F. Supp. 2d 625, 627 (W.D. Ky. 2007) ("Consent for removal is not required of fraudulently joined defendants." (citations omitted)); *Alexander v. UDV N. Am., Inc.*, 78 F. Supp. 2d 614, 617 n.4 (E.D. Mich. 1999) (same). Nor is there any evidence that the Dealership is or was an Ohio resident at the time the Complaint was filed or at the time of removal.

14. Removing Defendants likewise need not obtain the consent of Medical Mutual because, as demonstrated below, Medical Mutual shares the same interest as Plaintiffs and as such is properly realigned as a plaintiff. Thus, the consent requirement of 28 U.S.C. § 1446(b)(2)(A) does not apply to Medical Mutual.

15. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Removing Defendants, which include the summonses and Complaint, are attached as Exhibit A.

16. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and all parties, and a copy is being filed with the Clerk of the Court of Common Pleas of Cuyahoga County, Ohio.

## III. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

17. Removal is proper under 28 U.S.C. § 1332 because: (1) when the parties are properly aligned and the fraudulently joined Dealership is disregarded, each plaintiff is diverse from every properly joined defendant; and (2) Plaintiffs' claims put more than $75,000.00 in controversy, exclusive of interest and costs.

### A. Citizenship of the Parties.

18. Plaintiffs allege in their Complaint that they are adult individuals residing at 19624 Winding Trail, Strongsville, Ohio. (Compl. ¶¶ 11-12.) Accordingly, upon information and belief, Plaintiffs are citizens of the State of Ohio.

19. Defendant TMC is, and at the time Plaintiffs commenced this action was, a corporation organized under the laws of Japan with its principal place of business in Toyota City, Aichi Prefecture, Japan. (*Id.* ¶ 14.) TMC is therefore a citizen or subject of a foreign state for purposes of determining diversity. 28 U.S.C. §§ 1332(a)(2)–(3), (c)(1).

20. Defendant TMNA is, and at the time Plaintiffs commenced this action was, a corporation organized under the laws of the State of California with its principal place of business in Plano, Texas. (*Id.* ¶ 16.) TMNA is therefore a citizen of California and Texas for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

21. Defendant TMS is, and at the time Plaintiffs commenced this action was, a corporation organized under the laws of the State of California with its principal place of business in Plano, Texas. (*Id.* ¶ 18.) TMS is therefore a citizen of California and Texas for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

22. Defendant TEMA is, and at the time Plaintiffs commenced this action was, a corporation organized under the laws of the Commonwealth of Kentucky with its principal place of business in Plano, Texas. (*Id.* ¶ 20.) TEMA is therefore a citizen of Kentucky and Texas for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

23. Defendant TMMC is, and at the time Plaintiffs commenced this action was, a corporation organized under the laws of Canada with its principal place of business in Cambridge, Ontario, Canada. (*Id.* ¶ 21.) TMMC is therefore a citizen or subject of a foreign state for purposes of determining diversity. 28 U.S.C. §§ 1332(a)(2)–(3), (c)(1).

24. Plaintiffs allege that Defendant AAG-Cleveland, L.L.C. is a Delaware limited liability company with its principal place of business in Brook Park, Ohio, and that "one or more members of the Dealership are citizens of the State of Ohio." (*Id.* ¶ 26.) For purposes of diversity jurisdiction, a limited liability company is a citizen of each state of which its members are citizens. *Akno 101 Market St. St. Louis Missouri LLC v. Pourtaghi*, 43 F.4th 624, 627 (6th Cir. 2022) ("LLCs have the citizenships of their members and sub-members" and "when an LLC is a party in a **diversity** action, the court must know the citizenship of each member and sub-member"). Upon

information and belief, however, AAG-Cleveland's principal place of business is, and at the time Plaintiffs commenced this action was, in Houston, Texas. Further, the Complaint fails to identify the members of AAG-Cleveland or which are allegedly citizens of Ohio.

25. Defendant "Metro Lexus" is merely the registered trade name of AAG-Cleveland, L.L.C.; Plaintiffs allege that the two "are one and the same party." (Compl. ¶ 28.) As demonstrated by the Certification of Cancellation attached hereto as Exhibit B, the trade name of Metro Lexus was canceled with the Ohio Secretary of State as of September 9, 2025.

26. In addition to the absence of evidence of the citizenship of AAG-Cleveland, L.L.C.'s members or sub-members, and as detailed in Section III.C below, the Dealership has been fraudulently joined.

27. Plaintiffs allege that Defendant Medical Mutual is a mutual insurance company organized under the laws of the State of Ohio with its principal place of business in Cleveland, Ohio. (*Id.* ¶ 30.) Medical Mutual is therefore a citizen of Ohio. 28 U.S.C. § 1332(c)(1). But as detailed in Section III.B below, Medical Mutual must be realigned as a plaintiff, where its Ohio citizenship is consistent with complete diversity.

28. Thus, once Medical Mutual is realigned as a plaintiff and the Dealership's alleged Ohio citizenship is disregarded, this action is between citizens of Ohio (Plaintiffs and Medical Mutual), on one side, and citizens of California, Texas, and Kentucky (TMNA, TMS, and TEMA), on the other, with citizens or subjects of foreign states (TMC and TMMC) as additional parties.

29. Complete diversity therefore exists. 28 U.S.C. § 1332(a)(1), (a)(3). And because no properly joined and served defendant is a citizen of Ohio, the forum-defendant rule does not bar removal. 28 U.S.C. § 1441(b)(2).

**B. Medical Mutual Must Be Realigned as a Plaintiff.**

30. Diversity jurisdiction "cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." *City of Indianapolis*, 314 U.S. at 69. Instead, it is the court's duty to "look beyond the pleadings, and arrange the parties according to their sides in the dispute," as determined by "the principal purpose of the suit" and "the primary and controlling matter in dispute." *Id.* (internal quotation marks and citations omitted).

31. Under this "primary purpose" test, the court identifies the primary dispute in the litigation and then aligns the parties according to whether their interests are the same or adverse. *Thomas Solvent*, 955 F.2d at 1089–90 (joining the Third, Fifth, and Ninth Circuits and holding that "*Indianapolis Gas* requires that parties be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment"); *see also Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559–60 (6th Cir. 2010) (realignment is proper where parties share the same ultimate interests in the outcome of the action);

32. Here, the primary dispute is plain from the face of the Complaint: whether the Vehicle was defective and whether the Toyota Defendants are liable to Plaintiffs for the injuries Ms. Zaboura sustained on December 17, 2024. Plaintiffs introduce the case as "a products liability action under the Ohio Products Liability Act." (Compl. ¶ 1.) Four of the Complaint's five counts—and nearly all its 131 paragraphs—are directed to that question. (*Id.* ¶¶ 1-9, 37-125.)

33. Medical Mutual has no adverse stake in that dispute. Plaintiffs assert no product-liability, negligence, consortium, or punitive-damages claim against it. To the contrary, Counts III and IV expressly exclude Medical Mutual. (*Id.* ¶¶ 120-125.)

34. Plaintiffs say that Medical Mutual "is named solely so that its claimed subrogation interest in any recovery may be determined in this action." (*Id.* ¶ 10.) Medical Mutual insured Ms.

Zaboura's health-care expenses, "has paid medical expenses arising from the incident in an amount believed to exceed $200,000," and "has asserted a right of subrogation and reimbursement from any recovery Plaintiffs obtain in this action." (*Id.* ¶¶ 31, 94, 96.)

35. As a subrogated health insurer, Medical Mutual can recover only if, and only to the extent that, Plaintiffs recover from the Toyota Defendants. Every dollar of liability Plaintiffs establish against the Toyota Defendants increases the fund from which Medical Mutual seeks reimbursement; every defense on which the Toyota Defendants succeed diminishes it.

36. Medical Mutual's financial interest is thus wholly aligned with Plaintiffs' interest in establishing liability and maximizing damages against the Toyota Defendants, and wholly adverse to the Toyota Defendants. Indeed, Medical Mutual's claimed interest exists only as a derivative of Plaintiffs' tort claims. (*See id.* ¶¶ 127, 129 (Medical Mutual's "claimed interest attaches to any judgment or settlement in this action").)

37. That Plaintiffs and Medical Mutual may ultimately disagree about how to divide any recovery – including the application of Ohio Revised Code § 2323.44, Medical Mutual's share of fees and expenses, and the make-whole doctrine (*id.* ¶¶ 97, 127) – does not alter the analysis.

38. That allocation dispute is contingent, secondary, and ancillary: it will arise, if at all, only after Plaintiffs and Medical Mutual jointly succeed against the Toyota Defendants, and it does not affect whether or in what amount the Toyota Defendants are liable. Such a collateral disagreement does not control alignment; the parties' shared interest in the primary dispute does. *Thomas Solvent*, 955 F.2d at 1089–90.

39. Moreover, the declaration Plaintiffs seek in Count V is pleaded under Ohio Revised Code § 2721.12(A) precisely so that Medical Mutual "will be bound by the judgment" (Compl.

¶ 130) – confirming that Medical Mutual's role is that of an interested co-claimant to the recovery, not a genuine adversary on the merits.

40. Because Medical Mutual's interests in the primary and controlling matter in dispute are aligned with Plaintiffs' and adverse to the Toyota Defendants, Medical Mutual must be realigned as a plaintiff. As a plaintiff, Medical Mutual's Ohio citizenship is the same as that of Plaintiffs and diverse from that of every properly joined defendant. Medical Mutual's citizenship therefore neither destroys complete diversity nor implicates the forum-defendant rule.

**C. Upon Information and Belief, the Dealership is Not an Ohio Citizen. Additionally, it Has Been Fraudulently Joined.**

41. Although the Dealership is alleged to be a citizen of Ohio, the conclusory allegation is vague and without evidence. To the contrary, and upon information and belief, AAG-Cleveland is, and at the time Plaintiffs commenced this action was, a Delaware corporation with its principal place of business in Houston, Texas. Indeed, as of September 9, 2025, the "Metro Lexus" d/b/a was canceled with the Ohio Secretary of State. (Exhibit B.)

42. Regardless, the Dealership's presence would not defeat diversity here because it has been fraudulently joined. *See, e.g.*, *Coyne*, 183 F.3d at 493 ("[F]raudulent joinder of non-diverse defendants will not defeat removal on diversity grounds."); *King v. Centerpulse Orthopedics, Inc.*, No. 1:05-CV-1318, 2006 WL 456478, at *1 (N.D. Ohio Feb. 24, 2006). The fraudulent joinder doctrine likewise renders the forum-defendant rule inapplicable because a fraudulently joined defendant is not "properly joined" within the meaning of 28 U.S.C. § 1441(b)(2).

43. A defendant is fraudulently joined if there is no "reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quotation and citation omitted); *see also Coyne*, 183 F.3d at 493;

*Saginaw Hous. Comm'n*, 576 F.3d at 624; *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 952–54 (6th Cir. 2011) (citation omitted); *King*, 2006 WL 456478, at *2 ("Under the doctrine of fraudulent joinder, the inquiry is whether the plaintiff has stated at least a colorable cause of action against the defendants in the Ohio state courts.").

44. Plaintiffs' only substantive claim against the Dealership arises under Ohio Revised Code § 2307.78. (Compl. ¶¶ 113–119.) Under that statute, a supplier is liable for compensatory damages only if (1) the supplier was negligent and that negligence was a proximate cause of the harm, or (2) the product did not conform, when it left the supplier's control, to a representation made by the supplier. Ohio Rev. Code § 2307.78(A)(1)–(2).

45. Here, the heart of Plaintiffs' defect allegations is that the Vehicle "provided no automatic protection against rollaway to a driver exiting the [] Vehicle while it was in Reverse, whether or not the driver had turned Brake Hold on." (Compl. ¶ 59). None of the factual or legal allegations against the Dealership demonstrate any negligence on the part of the Dealership, let alone any negligence relevant to the core of Plaintiffs' defect allegations/theories.

46. As for factual allegations related to the Dealership, Plaintiffs allege:

a. "Prior to the sale, the Dealership inspected, reconditioned, and certified the Subject Vehicle under the L/Certified program and represented it to Plaintiff Ranna Zaboura as a certified like-new Lexus." (Compl. ¶ 40). There is nothing negligent about this action. Moreover, there is no allegation regarding what representation the Dealership made, if any, about the application of the Parking Support Brake in situations of rear cross traffic and/or automatic protection against rollaway to a driver exiting the Vehicle while it was in Reverse.

b. "The Dealership performed all service on the Subject Vehicle from the date of sale through September 2024." (Compl. ¶ 41). These actions do not constitute negligence, nor is there any allegation of service by the Dealership of any of the systems upon which Plaintiffs' defect claims are based.

c. "The Subject Vehicle's window label represented that the Subject Vehicle was equipped with 'Lexus Safety System+ 2.0,' including a 'Pre-Collision

System with Pedestrian Detection,' and with 'Blind Spot Monitor with Intuitive Parking Assist, Panoramic View Monitor, and Rear Cross Traffic Braking.'" (Compl. ¶ 43). These are all accurate representations and therefore not the basis for any alleged negligence.

d. "Plaintiff Ranna Zaboura saw and relied upon the window label, the L/Certified. materials, Toyota's marketing, and the Dealership's description of the Subject Vehicle's safety features in purchasing and operating the Subject Vehicle." (Compl. ¶ 45). This general, vague allegation does not provide any information about what representations, if any, the Dealership made about the Vehicle's "safety systems," including whether the Dealership represented that the Vehicle offered automatic rollaway protection under the circumstances of this incident.

47. The legal allegations against the Dealership similarly fail to provide a reasonable basis for predicting that state law might impose liability on the Dealership. In particular, Plaintiffs allege that the Dealership was negligent by:

a. "Describing the Subject Vehicle's parking-assist and rear automatic-braking features at sale and delivery as systems that would stop the Subject Vehicle to avoid a collision without disclosing that the braking releases within seconds and that the Subject Vehicle would not secure itself upon driver exit." (Compl. ¶ 116).

b. "Failing, as the Lexus-trained dealer that inspected, certified. delivered, and exclusively serviced the Subject Vehicle, to instruct Plaintiff Ranna Zaboura that the Subject Vehicle's only automatic rollaway protection depended upon Brake Hold, had to be switched on every trip, and did not operate in Reverse." (Compl. ¶ 116).

c. "Failing, at the Subject Vehicle's service visits, to advise Plaintiff Ranna Zaboura of, or to provide, any available update or countermeasure addressing rollaway upon driver exit." (Compl. ¶ 116.)

48. First, it is important to note that all of these theories are wholly derivative of Plaintiffs' design defect claims against Toyota.

49. Second, the allegations are legally deficient in that the Complaint pleads knowledge exhaustively – but only as to Toyota. Plaintiffs allege that the dangerous propensities of the Vehicle "were known to Toyota" (Compl. ¶ 102); that "Toyota knew of the rollaway hazard" and issued a

June 2019 press release (*id.* ¶ 77); that "Toyota knew or should have known that the Subject Vehicle was defective" based on NHTSA complaint data (*id.* ¶ 87); and that Toyota's own engineers have so testified (*id.* ¶ 91). Plaintiffs plead no facts showing that the Dealership had any independent knowledge of, or ability to implement, a design change in the Vehicle's braking software. Because this theory does not meet the requirements of Ohio Revised Code § 2307.78(A)(1), it provides no colorable basis for recovery.

50. Third, these allegations are belied by the information in the Owner's Manual, which is publicly available on Toyota's website and provided to consumers at the time of sale. The Owner's Manual expressly states that brake control is cancelled after approximately two seconds from application:

> ⚠ WARNING
>
> ■ **Limitations of the Parking Support Brake system**
>
> Do not overly rely on the system, as doing so may lead to an accident.
>
> ● The driver is solely responsible for safe driving. Always drive carefully, taking care to observe your surroundings. The Parking Support Brake system is designed to provide support to lessen the severity of collisions. However, it may not operate in some situations.
>
> ● The Parking Support Brake system is not designed to stop the vehicle completely. Additionally, even if the system has stopped the vehicle, it is necessary to depress the brake pedal immediately as brake control will be canceled after approximately 2 seconds.

True and accurate copies of the relevant pages from the 2020 Lexus RX350 Owner's Manual discussing the Vehicle's Rear Cross Traffic Alert and Parking Support Brake function for incidents similar to those alleged by Plaintiffs are attached hereto as Exhibit C.

51. Plaintiffs also allege that "the Subject Vehicle did not conform, when it left the control of the Dealership, to the Dealership's representations that it was a certified, inspected, like-new Lexus whose parking-assist and rear automatic-braking systems would stop the Subject

Vehicle to avoid collisions, upon which Plaintiff Ranna Zaboura justifiably relied, and the Dealership is liable pursuant to Ohio Revised Code 2307.78(A)(2).” (Compl. ¶ 117.) However, even Plaintiffs allege that the Vehicle did indeed apply the automatic brake to avoid collision with the object passing behind it. A representation that the system would stop the vehicle to avoid a collision is therefore not one with which the Subject Vehicle failed to “conform” under § 2307.78(A)(2).

52. Plaintiffs attempt to circumvent these deficiencies by alleging “[i]n the alternative” that the Dealership is liable as if it were the manufacturer under Ohio Revised Code § 2307.78(B)(6) “because the Dealership altered, modified, or failed to maintain the Subject Vehicle in the course of reconditioning, certifying, and servicing it.” (Compl. ¶ 118.) That bare recitation of statutory language is unsupported by a single factual allegation identifying any alteration, modification, or maintenance failure. And Ohio Revised Code § 2307.78(B)(6) requires more than an alteration – it requires that the alteration, modification, or failure to maintain rendered the product defective. *See* Ohio Rev. Code § 2307.78(B)(6).

53. More fundamentally, Plaintiffs’ alteration theory is contradicted by their own pleading. Plaintiffs allege that “[t]he Subject Vehicle was in a defective condition at the time it left the possession and control of Toyota and was not substantially changed or altered prior to the time of the incident.” (Compl. ¶ 108.) Plaintiffs’ entire theory of defect is that the Vehicle was designed and built by Toyota without a default automatic parking-brake safeguard. (*Id.* ¶¶ 4-8, 79-80, 103–104, 109.) Plaintiffs cannot simultaneously allege that the alleged defect originated with Toyota and that the vehicle was “not substantially changed or altered” before the incident, while also alleging that the Dealership’s post-sale alteration rendered it defective. Where a plaintiff's own

specific factual allegations foreclose a claim, the conclusory alternative assertion provides no "reasonable basis" for predicting liability. *Alexander*, 13 F.3d at 949.

54. Plaintiffs' other alternative theory, under Ohio Revised Code § 2307.78(B)(1), fares no better. That provision applies only where the manufacturer is not subject to judicial process in Ohio or a judgment against it cannot be enforced. Ohio Rev. Code § 2307.78(B)(1). Here, TMC was responsible for the overall design of the subject vehicle and TMMC assembled it into its final form. Those entities are routinely sued in the United States and are subject to Judicial Process in Ohio via the Hague convention or other means. Further, neither TMS nor TEMA is contesting jurisdiction in this case.

55. In sum, there is no reasonable basis for predicting that Ohio law might impose liability on the Dealership on the facts alleged. The Dealership is fraudulently joined, and its citizenship (if it is an Ohio citizen) must be disregarded.

**D. The Amount-In-Controversy Requirement is Satisfied.**

56. The amount-in-controversy requirement is satisfied because it is facially evident from the Complaint that Plaintiffs have placed an amount in excess of $75,000, exclusive of interest and costs, at issue.

57. Plaintiffs allege that Ms. Zaboura has incurred medical expenses arising from the incident "in an amount believed to exceed $200,000." (Compl. ¶ 96.) That figure alone is more than two and one-half times the jurisdictional threshold.

58. Plaintiffs further allege that Ms. Zaboura suffered "catastrophic injuries," including an unstable pelvic-ring fracture, multiple rib fractures, a left ankle fracture, and hemorrhagic shock; required arterial embolization, blood transfusions, surgical fixation, ten days of hospitalization including intensive care, and inpatient rehabilitation; and has suffered permanent impairment. (*Id.* ¶¶ 72-74.) Plaintiffs seek a determination that her injuries fall within Ohio

Revised Code § 2315.18(B)(3) (*id.* ¶ 92), Mr. Zaboura seeks damages for loss of consortium (*id.* ¶ 122), and Plaintiffs seek compensatory damages in excess of $25,000 on each count (*id.* at 25).

59. By removing this action to this Court, Removing Defendants do not waive any defenses, objections, or motions available under state or federal law. Removing Defendants expressly reserve the right to move for dismissal of some or all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12.

**CONCLUSION**

Defendants Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Engineering & Manufacturing North America, Inc., give notice that Case Number CV 26 146579 in the Court of Common Pleas of Cuyahoga County, Ohio, is removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Removing Defendants request that this Court (1) realign Defendant Medical Mutual of Ohio as a party plaintiff; (2) disregard the citizenship of Defendants AAG-Cleveland, L.L.C. d/b/a Metro Lexus and Metro Lexus as fraudulently joined; (c) retain jurisdiction for all further proceedings in this matter; and (d) and grant any other general or special relief as may be appropriate. In the event the Court does not believe that the Dealership has been fraudulently joined, the Removing Defendants respectfully request an opportunity to conduct limited jurisdictional discovery as to the Dealership's citizenship at the time the Complaint was filed and at the time of removal.

Dated: October 19, 2026.

Respectfully submitted,

*/s/ Clifford S. Mendelsohn*
Clifford S. Mendelsohn
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone: 216.592.5000
Facsimile: 216.592.5009
E-mail: clifford.mendelsohn@tuckerellis.com

Attorneys for Defendants Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Engineering & Manufacturing North America, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2026, a copy of the foregoing Notice of Removal was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy was served by e-mail upon:

Kyle B. Melling
James A. Lowe
Lowe Trial Lawyers
5875 Landerbrook Drive, Suite 220,
Cleveland, OH 44124
Kyle@LoweFightWin.com
James@LoweFightWin.com

and

W. Craig Bashein
Bashein & Bashein Co., L.P.A.
50 Public Square, Terminal Tower, 35th Floor
Cleveland, Ohio 44113
cbashein@basheinlaw.com

Counsel for Plaintiffs.

*<u>/s/ Clifford S. Mendelsohn</u>*
Attorneys for Defendants Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Engineering & Manufacturing North America, Inc.