# EXHIBIT A

XW0376-000

Tracking No: 9214890301798219150513

CUSTOMER DETAILS

Shawn Wilson
W1-5C CM-AR
W1-5C-82f

Received Date: 09/23/2026 10:42:33am

Last Action: 2026-09-23 10 42:33

FIRST-CLAS

ZIP 44102
02 7W
0008041111

LEGAL ONE

NAILAH K. BYRD
1200 ONTARIO
CLEVELAND, OH 44113

Case# CV26146579

9214 8903 0179 8219 1505 13

TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.
6565 HEADQUARTERS DRIVE
PLANO TX 75024

# THE COURT OF COMMON PLEAS, CIVIL DIVISION
# CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

RANNA ZABOURA, ET AL.
**Plaintiff**

**V.**

TOYOTA MOTOR CORPORATION, ET AL
**Defendant**

**CASE NO.** CV26146579

**JUDGE** ASHLEY KILBANE

## SUMMONS

SUMC CM

**Notice ID:** 61997092

From: RANNA ZABOURA
19624 WINDING TRAIL
STRONGSVILLE OH 44149
P1

Atty.: JAMES A LOWE
115 MAIN STREET
CHARDON, OH 44024

To: TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA, INC.
6565 HEADQUARTERS DRIVE
PLANO TX 75024
D4

**NOTICE TO THE DEFENDANT:**

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff. You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.gov/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.

**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

**Date Sent:** 09/15/2026

**By**____________________
**Deputy**

CMSN130

# Cuyahoga County Clerk of Courts
Nailah K. Byrd

**Multilingual Notice:**

You have been named as a defendant in this Court. You must file an answer within 28 days; if you fail to answer, the Court may enter judgment against you for the relief stated in the Complaint. Seek assistance from both an interpreter and an attorney. Your inability to understand, write, or speak English will not be a defense to possible judgment against you.

1. **Spanish (US)**
   ***Aviso multilingüe:

   Este Tribunal lo ha declarado como acusado. Debe presentar una respuesta en un plazo de 28 días. Si no contesta en dicho plazo, el Tribunal podrá dictar sentencia en su contra por el amparo que se detalla en la demanda. Solicite la ayuda de un intérprete y de un abogado. Su incapacidad para comprender, escribir o hablar inglés no se considerará como defensa ante una posible sentencia en su contra.

2. **Somali**
   ***Ogeysiis luqadda badan ah:

   Waxaa laguu magacaabay sida eedeysane gudaha Maxkamadan. Waa in aad ku soo gudbisaa jawaab 28 maalmood gudahood; haddii aad ku guuldareysto jawaabta, Maxkamada laga yaabo in ay gasho xukun adiga kaa soo horjeedo ee ka nasashada lagu sheegay Cabashada. Raadi caawinta ka timid labadaba turjubaanka iyo qareenka. Karti la'aantaada aad ku fahmo, ku qoro, ama ku hadasho Af Ingiriisiga ma noqon doonto difaacida xukunkaaga suuralka ah ee adiga kugu lidka ah.

3. **Russian**
   ***Уведомление на разных языках:

   Вы были названы в качестве ответчика в данном суде. Вы должны предоставить ответ в течение 28 дней; если Ваш ответ не будет получен, суд может вынести решение против Вас и удовлетворить содержащиеся в жалобе требования. Воспользуйтесь услугами переводчика и адвоката. Тот факт, что Вы не понимаете английскую речь и не можете читать и писать по-английски, не является препятствием для возможного вынесения судебного решения против Вас.

4. **Arabic**
   ***ملاحظة متعددة اللغات:

   لقد تم اعتبارك مدعى عليه في هذه المحكمة. يجب أن تقدم ردا خلال 28 يوما؛ وإذا لم تقم بالرد، فقد تصدر المحكمة حكما ضدك بالتعويض المنصوص عليه في هذه الشكوى القضائية. اطلب المساعدة من مترجم فوري ومحام. فلن تعد عدم قدرتك على فهم اللغة الإنجليزية أو كتابتها أو تحدثها دفاعا لك أمام الحكم المحتمل ضدك.

5. **Chinese (Simplified)**
   ***多語版本通知：

   您在本法庭已被列为被告。您必须于 28
   日内递交答辩状；如果没有递交答辩状，法庭会针对诉状中声明的补救措施对您作出不利判决。请向口译人员和律 师寻求帮助。您无法理解、书写或说英语的情况不能作为对您可能作出不利判决的辩护理由。

Justice Center, 1st Floor • 1200 Ontario Street • Cleveland, Ohio 44113-1664 • 216.443.7950

Ohio Relay Service 711 • Website: coc.cuyahogacounty.us

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**September 14, 2026 15:16**

By: KYLE B. MELLING 0091208

Confirmation Nbr. 3977689

RANNA ZABOURA, ET AL.

vs.

TOYOTA MOTOR CORPORATION, ET AL

CV 26 146579

**Judge:** ASHLEY KILBANE

**Pages Filed:** 26

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

**RANNA ZABOURA**
19624 Winding Trail
Strongsville, Ohio 44149,

and

**GEORGE ZABOURA**
19624 Winding Trail
Strongsville, Ohio 44149,

Plaintiffs,

v.

**TOYOTA MOTOR CORPORATION**
1 Toyota-Cho
Toyota City, Aichi Prefecture
Japan 471-8571,

and

**TOYOTA MOTOR NORTH AMERICA, INC.**
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219,

and

**TOYOTA MOTOR SALES, U.S.A., INC.**
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219,

and

**TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.**
6565 Headquarters Drive
Plano, Texas 75024,

and

CASE NO.:

JUDGE

**COMPLAINT**

***JURY TRIAL DEMANDED***

**TOYOTA MOTOR MANUFACTURING CANADA INC.**
1055 Fountain Street North
Cambridge, Ontario N3H 4R7, Canada,

and

**AAG-CLEVELAND, L.L.C. d/b/a METRO LEXUS**
13600 Brookpark Rd.
Cleveland, Ohio 44135
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219,

and

**METRO LEXUS**
13600 Brookpark Rd.
Cleveland, Ohio 44135
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219,

and

**MEDICAL MUTUAL OF OHIO**
100 American Rd.
Cleveland, Ohio 44144
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219

Defendants.

NOW come Plaintiffs, Ranna Zaboura and George Zaboura, by and through their undersigned counsel, and file the following Complaint against Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing Canada Inc., AAG-Cleveland,

L.L.C. d/b/a Metro Lexus, Metro Lexus, and Medical Mutual of Ohio, and in support thereof aver as follows:

## INTRODUCTION

1. This is a products liability action under the Ohio Products Liability Act, Ohio Revised Code §2307.71, et seq.

2. On December 17, 2024, Plaintiff Ranna Zaboura's 2020 Lexus RX350 stopped itself and warned her of a hazard behind it.

3. As Plaintiff Ranna Zaboura stepped out to see what was behind her, the 2020 Lexus RX350 rolled backward and ran over her.

4. The 2020 Lexus RX350's rear automatic braking system is designed to release the brakes after approximately two seconds, or as soon as the driver touches the brake pedal, whether or not the driver is in a position to take back control of the vehicle.

5. At the time Plaintiff Ranna Zaboura stepped out, the 2020 Lexus RX350 knew that her seatbelt was unbuckled, her driver's door was open, and the transmission was in reverse.

6. Toyota designed the 2020 Lexus RX350 to use that information only to display a small "Shift to P" message, rather than to apply the electronic parking brake the vehicle already had.

7. Toyota has built an automatic parking brake that engages on driver exit into Lexus vehicles since 2007, and competing 2020 model year vehicles secured themselves automatically when the driver exited.

8. In June 2019, Toyota publicly announced that "starting from Model Year 2020" it would phase in an "Automatic Park" feature to "help reduce the risk of roll-away." The 2020 Lexus RX350, a Model Year 2020 Lexus with an electronic parking brake, did not have that feature.

9. Plaintiffs bring claims against Toyota for defective design, defective manufacture, inadequate warning, and nonconformance with representation under Ohio Revised Code §§2307.74 through 2307.77; against the Dealership that certified, sold, and serviced the 2020 Lexus RX350 as a supplier under Ohio Revised Code §2307.78; for punitive damages under Ohio Revised Code §2307.80; and for Plaintiff George Zaboura's loss of consortium.

10. Medical Mutual of Ohio is named solely so that its claimed subrogation interest in any recovery may be determined in this action.

## PARTIES

11. At all times relevant hereto, Plaintiff Ranna Zaboura is and was an adult individual residing at 19624 Winding Trail, Strongsville, Ohio 44149.

12. At all times relevant hereto, Plaintiff George Zaboura is and was an adult individual residing at 19624 Winding Trail, Strongsville, Ohio 44149, and is and was the husband of Plaintiff Ranna Zaboura.

13. At all times relevant hereto, Plaintiff Ranna Zaboura was the owner and operator of a 2020 Lexus RX350 (hereinafter referred to as the "2020 Lexus RX350" or the "Subject Vehicle") (VIN: 2T2JZMDA0LC223360).

14. Defendant Toyota Motor Corporation (hereinafter "TMC") is a corporation organized under the laws of Japan with its principal place of business at 1 Toyota-Cho, Toyota City, Aichi Prefecture, Japan.

15. Defendant TMC is a manufacturer as defined in Ohio Revised Code §2307.71, which designed, engineered, tested, produced, created, made, constructed, manufactured, and/or assembled the Subject Vehicle and its braking, parking-brake, and driver-assistance systems.

16. Defendant Toyota Motor North America, Inc. (hereinafter "TMNA") is a corporation organized under the laws of the State of California with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. TMNA is registered to do business in the State of Ohio (Ohio Secretary of State No. 3910589) and has designated CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219, as its statutory agent.

17. Defendant TMNA directs Toyota's North American sales, engineering, and manufacturing operations and issued the June 12, 2019 "Automatic Park" announcement described within. Defendant TMNA is a manufacturer as defined in Ohio Revised Code §2307.71.

18. Defendant Toyota Motor Sales, U.S.A., Inc. (hereinafter "TMS") is a corporation organized under the laws of the State of California with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. TMS is registered to do business in the State of Ohio (Ohio Secretary of State No. 754945) and has designated CT Corporation System as its statutory agent.

19. Defendant TMS, through its Lexus division, imported and distributed the Subject Vehicle, published its owner's manual and marketing materials, operates the Lexus certified pre-owned ("L/Certified") program, and distributes Lexus vehicles to franchised dealers throughout the State of Ohio and specifically Cuyahoga County. Defendant TMS is a manufacturer and a supplier as defined in Ohio Revised Code §2307.71.

20. Defendant Toyota Motor Engineering & Manufacturing North America, Inc. (hereinafter "TEMA") is, upon information and belief, a corporation organized under the laws of the Commonwealth of Kentucky with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. TEMA engineers, designs, tests, and validates Toyota- and Lexus-brand

vehicles and their component systems for the North American market. Defendant TEMA is a manufacturer as defined in Ohio Revised Code §2307.71.

21. Defendant Toyota Motor Manufacturing Canada Inc. (hereinafter "TMMC") is a corporation organized under the laws of Canada with its principal place of business at 1055 Fountain Street North, Cambridge, Ontario N3H 4R7, Canada. TMMC assembled the Subject Vehicle at its Cambridge, Ontario plant in November 2019. Defendant TMMC is a manufacturer as defined in Ohio Revised Code §2307.71.

22. Defendants TMC, TMNA, TMS, TEMA, and TMMC are hereinafter collectively referred to as "Toyota."

23. At all times material hereto, Toyota designed, tested, manufactured, marketed, advertised, sold, distributed, and/or supplied motor vehicles, including the Subject Vehicle, throughout the United States, including in the State of Ohio and, specifically, Cuyahoga County.

24. At all times material hereto, Toyota conducted and continues to conduct substantial and continuous business in the State of Ohio and, specifically, Cuyahoga County, through a network of franchised Toyota and Lexus dealers, including the Dealership described below. Toyota derives substantial revenue from business within the State of Ohio and, specifically, Cuyahoga County.

25. The division of design, engineering, manufacturing, distribution, and marketing responsibilities among the Toyota entities is known to Toyota and not to Plaintiffs. Plaintiffs therefore allege in the alternative that each Toyota entity performed each of those functions and acted as the agent, joint venturer, and/or alter ego of the others with respect to the Subject Vehicle.

26. Defendant AAG-Cleveland, L.L.C. d/b/a Metro Lexus (hereinafter the "Dealership") is a limited liability company organized under the laws of the State of Delaware and

registered to do business in the State of Ohio (Ohio Secretary of State No. 1473347), with its principal place of business located at 13600 Brookpark Road, Brook Park, Cuyahoga County, Ohio, and has designated CT Corporation System as its statutory agent. Upon information and belief, one or more members of the Dealership are citizens of the State of Ohio.

27. At all times relevant hereto, the Dealership owned and operated the franchised Lexus dealership known as Metro Lexus, located at 13600 Brookpark Road, Brook Park, Cuyahoga County, Ohio, under Ohio registered trade name No. 1226201.

28. Defendant Metro Lexus is the registered Ohio trade name under which the Dealership sold and serviced the Subject Vehicle and is named herein pursuant to Ohio Revised Code §1329.10(C). Metro Lexus and AAG-Cleveland, L.L.C. are one and the same party, and references herein to the "Dealership" include both.

29. The Dealership sold, inspected, reconditioned, certified, and serviced the Subject Vehicle and is a supplier as defined in Ohio Revised Code §2307.71.

30. Defendant Medical Mutual of Ohio (hereinafter "Medical Mutual") is a mutual insurance company organized under the laws of the State of Ohio (Ohio Secretary of State No. 189155) with its principal place of business in Cleveland, Cuyahoga County, Ohio, and has designated CT Corporation System as its statutory agent. Medical Mutual is a citizen of the State of Ohio.

31. Medical Mutual insured Plaintiff Ranna Zaboura's health-care expenses under a policy of insurance issued in the State of Ohio, has paid medical expenses arising from the incident described within, and claims a right of subrogation and reimbursement from any recovery in this action.

**JURISDICTION AND VENUE**

32. At all times relevant hereto, Toyota and the Dealership were and are performing activities and services, and were soliciting other activities and services, within Cuyahoga County, Ohio, and products manufactured, distributed, sold, or serviced by or on behalf of said parties, including the Subject Vehicle, were and are sold, used, and consumed in Cuyahoga County, Ohio, in the ordinary course of their respective trade or business. Further, the tortious act occurred in the State of Ohio.

33. The Subject Vehicle was delivered new to a Lexus dealer in Cuyahoga County, Ohio, was sold new in Ohio, was sold again in Ohio to Plaintiff Ranna Zaboura, and was serviced, registered, and driven in Ohio. Plaintiffs' claims arise out of and relate to Toyota's and the Dealership's activities in the State of Ohio.

34. This Court has personal jurisdiction over all Defendants pursuant to Ohio Revised Code §2307.382 and Civ.R. 4.3(A). Defendants TMC and TMMC may be served pursuant to the Hague Service Convention and Civ.R. 4.3 and 4.5.

35. This Court has subject-matter jurisdiction pursuant to Ohio Revised Code §2305.01, as the amount in controversy exceeds $25,000, exclusive of interest and costs, and pursuant to Ohio Revised Code §§2721.02 and 2721.03 as to the declaratory relief sought in Count V.

36. Venue is proper in Cuyahoga County, Ohio, pursuant to Civ.R. 3(C)(2), (3), and (6), as the Dealership and Medical Mutual have their principal places of business in Cuyahoga County, the Subject Vehicle was sold to Plaintiff Ranna Zaboura in Cuyahoga County, and the incident described within occurred in Cuyahoga County.

## STATEMENT OF MATERIAL FACTS

37. The Subject Vehicle was assembled by Defendant TMMC in Cambridge, Ontario, in November 2019, was distributed by Defendant TMS, and was delivered new to Metro Lexus in Brook Park, Ohio.

38. The Subject Vehicle was first sold or leased through Metro Lexus on or about November 26, 2019.

39. On or about September 2, 2022, Plaintiff Ranna Zaboura purchased the Subject Vehicle from the Dealership as a Lexus-certified ("L/Certified") pre-owned vehicle.

40. Prior to the sale, the Dealership inspected, reconditioned, and certified the Subject Vehicle under the L/Certified program and represented it to Plaintiff Ranna Zaboura as a certified, like-new Lexus.

41. The Dealership performed all service on the Subject Vehicle from the date of sale through September 2024.

42. Plaintiff Ranna Zaboura has owned Lexus vehicles for years and chose them because Toyota advertised, and she believed, that Lexus vehicles were among the safest on the road.

43. The Subject Vehicle's window label represented that the Subject Vehicle was equipped with "Lexus Safety System+ 2.0," including a "Pre-Collision System with Pedestrian Detection," and with "Blind Spot Monitor with Intuitive Parking Assist, Panoramic View Monitor, and Rear Cross Traffic Braking."

44. Toyota marketed and advertised Lexus Safety System+ 2.0 as "Advanced Safety for Peace of Mind" in its brochures, on its website, and in its advertising. Upon information and

belief, Toyota approved these representations and intended consumers, including Plaintiff Ranna Zaboura, to rely upon them.

45. Plaintiff Ranna Zaboura saw and relied upon the window label, the L/Certified materials, Toyota's marketing, and the Dealership's description of the Subject Vehicle's safety features in purchasing and operating the Subject Vehicle.

46. The Subject Vehicle was equipped with a conventional lever-type gear selector with Park, Reverse, Neutral, and Drive positions, and with a keyless push-button ignition.

47. The Subject Vehicle was equipped with an electronic parking brake (hereinafter "EPB") that is applied and released by electric motors under the control of the Subject Vehicle's computer. The Subject Vehicle's software can, and in some circumstances does, apply the EPB automatically without any action by the driver.

48. The Subject Vehicle was equipped with a rear automatic-braking system that Toyota calls the Parking Support Brake (hereinafter "PKSB"), consisting of Intuitive Parking Assist, Intelligent Clearance Sonar, and Rear Cross Traffic Braking.

49. When the Subject Vehicle is backing slowly and its sensors detect an object behind it, the PKSB sounds an alarm, displays a warning, reduces engine power, and automatically applies the brakes to prevent or mitigate a collision.

50. After the PKSB detects a hazard and stops the Subject Vehicle, it releases the brake after approximately 2 seconds, or as soon as the driver depresses the brake pedal.

51. The PKSB does not determine whether the driver is still seated, belted, or behind a closed door before it releases the brakes and returns control of the Subject Vehicle to the driver. Further, the PKSB does not warn the driver that it is returning control to the driver, nor engage in any check to confirm that the driver is prepared for control to be returned.

52. The Subject Vehicle continuously monitors whether the driver's seatbelt is buckled, whether the driver's door is open, the position of the gear selector, whether the Subject Vehicle is moving, whether the brake pedal is depressed, and whether the EPB is applied.

53. When the engine is on, the transmission is not in Park, the Subject Vehicle is stopped, and the driver's door is opened, the Subject Vehicle's software displays the message "Shift to P before exiting vehicle" in text on the instrument cluster and sounds a buzzer. Toyota's service information identifies vehicle rollaway as the hazard this message addresses.

54. Toyota's owner's manual for the Subject Vehicle states that "[a] buzzer sounds the first time a message is shown on the multi-information display," and, on the same page that describes the "Shift to P Before Exiting Vehicle" message, states: "In some cases, the buzzer may not be heard due to being in a noisy location or audio sound."

55. Under those same conditions, the Subject Vehicle does not apply the EPB, does not hold the service brakes, and does not shift the transmission to Park.

56. The Subject Vehicle was equipped with a driver-selectable feature called "Brake Hold," which, when the driver turns it on, holds the brakes after a stop so the driver can remove a foot from the brake pedal. When Brake Hold is on and holding the Subject Vehicle, the software automatically applies the EPB if the driver's door is opened or the driver's seatbelt is unbuckled.

57. Brake Hold is off by default and turns off each time the Subject Vehicle is shut down, so that the driver must press the Brake Hold button on every trip. Toyota describes Brake Hold to owners as a convenience for waiting in traffic, not as a safety feature.

58. Brake Hold does not operate when the transmission is in Reverse.

59. The Subject Vehicle therefore provided no automatic protection against rollaway to a driver exiting the Subject Vehicle while it was in Reverse, whether or not the driver had turned Brake Hold on.

60. On or about December 17, 2024, at approximately 9:00 a.m., Plaintiff Ranna Zaboura was backing the Subject Vehicle slowly out of a parking space in the Giant Eagle parking lot located at 15919 Pearl Road, Strongsville, Cuyahoga County, Ohio. The weather was clear and the pavement was dry and essentially level.

61. As Plaintiff Ranna Zaboura backed, an object, which Plaintiffs now believe was an unattended shopping cart, rolled behind the Subject Vehicle.

62. The PKSB detected the object, sounded its alarm, displayed a red collision warning on the instrument panel and the infotainment screen, and abruptly stopped the Subject Vehicle.

63. Plaintiff Ranna Zaboura was startled and reasonably believed that the Subject Vehicle had stopped itself for a hazard behind it and would remain stopped. She did not know what the Subject Vehicle had detected or whether she had hit a person, a child, or a cart, and she quickly placed her foot on the brake, unbuckled her seatbelt, opened the driver's door, and began to step out to find out.

64. Plaintiff Ranna Zaboura did not move the gear selector to Park. The Subject Vehicle remained running and in Reverse.

65. The PKSB's braking released, either because approximately two seconds had elapsed or because Plaintiff Ranna Zaboura's application of the brake pedal cancelled it, as Toyota designed it to do.

66. The EPB did not apply. The Subject Vehicle did not shift to Park.

67. As Plaintiff Ranna Zaboura's foot left the brake pedal and she stepped out, the Subject Vehicle immediately moved backward under engine power.

68. The open driver's door knocked Plaintiff Ranna Zaboura to the ground, and the Subject Vehicle's left front wheel rolled over her entire body from her feet to right shoulder.

69. The Subject Vehicle continued backward across the parking lot until it struck a parked, unoccupied vehicle and pushed that vehicle into a cart corral.

70. When Strongsville police officers arrived minutes later, the Subject Vehicle's reverse lights were still illuminated.

71. Plaintiff Ranna Zaboura lay on the pavement, conscious and in severe pain, until help arrived. Plaintiff George Zaboura arrived at the scene before the ambulance and found his wife crushed on the pavement.

72. As a direct and proximate result of the defective aspects of the Subject Vehicle, Plaintiff Ranna Zaboura suffered catastrophic injuries, including but not limited to an unstable "open-book" pelvic-ring fracture with bilateral acetabular and pubic rami fractures, rupture of the pubic symphysis, and bilateral sacroiliac dislocation; fractures of the right second through seventh ribs; a left ankle fracture; and a perineal hematoma with active arterial hemorrhage and hemorrhagic shock.

73. Plaintiff Ranna Zaboura required emergency arterial embolization, blood transfusions, surgical fixation of her pelvis and ribs with placement of a chest tube, ten days of hospitalization including intensive care, two weeks of inpatient rehabilitation, months in a wheelchair and hospital bed at home, and continuing therapy.

74. Plaintiff Ranna Zaboura has suffered permanent impairment, including chronic pelvic-floor dysfunction with urinary incontinence and bowel dysfunction, neuropathic pain, impaired mobility, scarring and disfigurement, and psychological trauma.

75. It was foreseeable to Toyota that a driver who had been stopped and warned by the PKSB would step out of the Subject Vehicle to look at what was behind it.

76. It was foreseeable to Toyota, and was documented in published human-factors research known to Toyota, that drivers who step out of a stopped vehicle frequently keep a foot on the brake pedal until they are out of the door and begin moving away before realizing the transmission is not in Park.

77. In fact, because Toyota knew of the rollaway hazard presented by drivers exiting vehicles that are not in Park, on June 12, 2019, prior to the Subject Vehicle's manufacture, Defendant TMNA issued a press release titled "Toyota Plans to Deploy Automatic Engine Shut Off and Automatic Park Features to Vehicle Line Up," which stated:

> "[S]tarting from Model Year 2020, Toyota will begin to phase in Automatic Park, which is designed to help reduce the risk of roll-away. The Automatic Park feature will be available in vehicles with electronic means of shifting and/or applying the parking brake, and is designed to automatically shift the vehicle into the 'park' position and/or apply the electronic parking brake, in the event the driver exits the vehicle without placing the vehicle in 'park.'"

78. The Subject Vehicle was built in November 2019, five months after the press release. The Subject Vehicle is a Model Year 2020 vehicle equipped with an electronic parking brake.

79. The Subject Vehicle was not equipped with the Automatic Park feature described in Toyota's June 12, 2019 press release.

80. The Subject Vehicle had all of the equipment required to apply the electronic parking brake, in the event that the driver exits the vehicle without placing the vehicle in park. This includes a seat belt sensor, a door sensor, a gearshift sensor and an electronic parking brake.

81. Toyota has applied the EPB automatically upon door-open or seatbelt-off within Brake Hold since the 2007 Lexus LS460, and has automatically shifted its electronic-shifter hybrid vehicles to Park upon driver exit since at least model year 2011.

82. For model year 2021, Toyota released the Toyota Sienna Hybrid, which, like the Subject Vehicle, combines a lever-type gear selector with an electronic parking brake, with a "Parking Brake Automatic Lock" function that applies the EPB automatically when the driver exits with the transmission out of Park.

83. Upon information and belief, the Lexus RX received an equivalent default automatic parking-brake safeguard for model year 2023.

84. By model year 2020, vehicles that automatically secured themselves when the driver exited out of Park, without any driver opt-in, were in production across the industry, including the Jeep Grand Cherokee and Cherokee, Ram 1500, Dodge Durango, Chrysler Pacifica, Ford Explorer, Lincoln Aviator, and Tesla vehicles, and models from Mercedes-Benz, Volvo, Hyundai, Kia, and Genesis.

85. Upon information and belief, in 2024 Kia added an automatic EPB-on-exit safeguard to more than 400,000 already-sold model-year 2020 through 2024 Telluride vehicles, which, like the Subject Vehicle, have a lever-type shifter and an EPB, by software update in NHTSA Recall No. 24V-214.

86. Toyota could have provided the same safeguard to the Subject Vehicle at any time before December 17, 2024, including through the Dealership at a service visit or over the air through the Subject Vehicle's connected-services system.

87. Toyota knew or should have known that the Subject Vehicle was defective if it did not secure itself when the driver exited out of Park, as other similar incidents had been reported to Toyota. Before the Subject Vehicle was sold, NHTSA's complaint database contained hundreds of owner reports of Toyota and Lexus rollaways, including reports of injuries and deaths, and NHTSA data showed vehicle rollaway deaths rising sharply.

88. In 2016, FCA US LLC recalled more than one million vehicles (NHTSA Recall No. 16V-240) after concluding that chimes and visual alerts had "not stopped some" drivers from exiting with the transmission out of Park and that the absence of an automatic countermeasure was a safety defect. The warning strategy FCA found defective in 2016 is materially the same as the warning strategy Toyota used on the Subject Vehicle.

89. Toyota has recalled other Toyota and Lexus vehicles, including in 2017, 2022, and 2025 (NHTSA Recall Nos. 17V-717, 22V-661, and 25V-656), because their electronic parking brakes could fail to engage, and in those recalls warned owners that a vehicle left out of Park without the parking brake set "could rollaway."

90. Upon information and belief, Toyota designed its vehicles' computers to record an event labeled "Driver Exited Vehicle When Shift Position Wasn't P."

91. Upon information and belief, Toyota engineers have testified under oath in other rollaway litigation that automatic application of the electronic parking brake upon driver exit was technically feasible as early as 2007 and that driver safety is more important than the annoyance of an unwanted parking-brake application.

92. Plaintiff Ranna Zaboura's injuries constitute permanent and substantial physical deformity and permanent loss of use of a bodily organ system within the meaning of Ohio Revised Code §2315.18(B)(3).

93. Pursuant to Ohio Revised Code §2307.80, Toyota's manufacture and sale of the Subject Vehicle with its automatic parking-brake safeguard disabled by default and non-functional in Reverse, after publicly announcing that safeguard for Model Year 2020 vehicles and while marketing the Subject Vehicle's automatic braking as "Advanced Safety for Peace of Mind," manifested a flagrant disregard of the safety of persons, including Plaintiff Ranna Zaboura, who might be harmed by the Subject Vehicle.

94. At all times relevant hereto, Plaintiff Ranna Zaboura's health-care expenses were insured by Medical Mutual under a group policy of insurance issued in the State of Ohio. Upon information and belief, the policy is fully insured by Medical Mutual and is not a self-funded employee-benefit plan.

95. Plaintiffs' claim against Medical Mutual arises solely under Ohio law, including Ohio Revised Code Chapter 2721, Ohio Revised Code §2323.44, and the terms of the policy.

96. Medical Mutual has paid medical expenses arising from the incident in an amount believed to exceed $200,000 and has asserted a right of subrogation and reimbursement from any recovery Plaintiffs obtain in this action.

97. Plaintiffs contend that any interest of Medical Mutual is subject to the limitations of Ohio Revised Code §2323.44, including proportional diminution where Plaintiffs' recovery is less than the full value of their damages; is subject to Medical Mutual's proportionate share of attorney fees and expenses; is limited to payments for treatment of injuries caused by the incident;

is subordinate to Plaintiffs' right to be made whole; and is governed by the terms of the Ohio policy.

98. The Subject Vehicle has been preserved in Plaintiffs' counsel's custody. Plaintiffs demand that Defendants preserve all data recorded or transmitted by the Subject Vehicle and all design, testing, failure-mode, field-report, complaint, warranty, recall, and technical-service records relating to the Parking Support Brake, electronic parking brake, Brake Hold, "Shift to P" warning, and Automatic Park systems.

99. No Federal Motor Vehicle Safety Standard requires, addresses, or prohibits an automatic parking-brake or shift-to-Park safeguard triggered by driver exit. FMVSS 114 imposes only minimum, key-based rollaway-prevention requirements, and 49 U.S.C. §30103(e) preserves liability notwithstanding compliance with a federal standard.

## COUNT I
**(All Plaintiffs v. Defendants TMC, TMNA, TMS, TEMA, and TMMC)**
**Ohio Revised Code §2307, et seq.**

100. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

101. At all times relevant hereto, Toyota was engaged in the business of designing, developing, manufacturing, testing, engineering, approving, marketing, promoting, assembling, equipping, inspecting, labeling, advertising, distributing, selling, and supplying motor vehicles and the component parts of motor vehicles, including the Subject Vehicle, for use by the consuming public in the State of Ohio and throughout the world.

102. At all times relevant hereto, the dangerous propensities of the Subject Vehicle were known to Toyota, or were reasonably and scientifically knowable to it, through appropriate research and testing by known methods, at the time it designed, developed, manufactured, tested,

engineered, approved, marketed, promoted, advertised, distributed, and sold the Subject Vehicle to the consuming public, including consumers in the State of Ohio, but were not known to end users or consumers, including Plaintiff Ranna Zaboura.

103. At the time the Subject Vehicle left the control of Toyota, it was defective in design and manufacture and unreasonably dangerous to a person who might reasonably be expected to use it in a foreseeable manner.

104. The risks of the design of the Subject Vehicle outweighed the benefits, and accordingly the Subject Vehicle was defective in its design pursuant to Ohio Revised Code §2307.75. At all times relevant, a practical and technically feasible alternative design was available that would have prevented the harm for which Plaintiffs seek to recover compensatory damages without substantially impairing the usefulness or intended purpose of the Subject Vehicle.

105. The Subject Vehicle was defective in manufacture pursuant to Ohio Revised Code §2307.74 because, upon information and belief, its PKSB, EPB, or related components or software deviated in a material way from Toyota's design specifications or performance standards, or from otherwise identical units.

106. The Subject Vehicle was defective by reason of Toyota's failure to provide adequate warning or instruction pursuant to Ohio Revised Code §2307.76, because Toyota knew or, in the exercise of reasonable care, should have known of the risks described herein and failed to provide the warning or instruction, at the time of marketing and thereafter, that a manufacturer exercising reasonable care would have provided, given the nature and magnitude of those risks, the likely lack of awareness of them by consumers and users of the Subject Vehicle, and the likelihood that they would cause harm. Those risks were not open and obvious and were not matters of common knowledge.

107. The Subject Vehicle was defective because it did not conform, when it left the control of Toyota, to representations made by Toyota with respect to its character, quality, and/or safety, pursuant to Ohio Revised Code §2307.77, upon which Plaintiff Ranna Zaboura justifiably relied.

108. The Subject Vehicle was in a defective condition at the time it left the possession and control of Toyota and was not substantially changed or altered prior to the time of the incident.

109. Specifically, Toyota, by its divisions, subdivisions, agents, servants, workmen, and/or employees, is strictly liable under Ohio Products Liability law for one or more of the following reasons:

a. Designing, manufacturing, distributing, and/or selling the Subject Vehicle with a Parking Support Brake that stops the vehicle, alarms the driver, and then releases the brakes within approximately two seconds or upon brake application without any means of securing the vehicle if the driver is exiting;

b. Failing to design, manufacture, distribute, and/or sell the Subject Vehicle with a default automatic application of the electronic parking brake, or an automatic shift to Park, upon driver-exit indicators in every gear, including Reverse;

c. Confining the Subject Vehicle's only automatic rollaway protection to the optional Brake Hold feature, which is off by default, must be re-enabled on every trip, and does not operate in Reverse;

d. Failing to equip the Subject Vehicle, a Model Year 2020 vehicle with an electronic parking brake, with the Automatic Park feature Toyota publicly announced for Model Year 2020 vehicles on June 12, 2019;

e. Failing to install a technologically and economically feasible rollaway safeguard on the Subject Vehicle that Toyota had used in its own vehicles since 2007 and that competing 2020 vehicles included as standard;

f. Failing to provide sufficient warnings as to the reasonably foreseeable dangers in the use or operation of the Subject Vehicle, including that the Parking Support Brake releases within seconds, that the Subject Vehicle will not secure itself upon driver exit, and that Brake Hold provides no protection in Reverse;

g. Designing the "Shift to P" warning so that it appears in small text outside the view of an exiting driver, with a buzzer that Toyota concedes in its own manual "may not be heard";

h. Marketing the Subject Vehicle's automatic-braking and parking-assist systems as "Advanced Safety for Peace of Mind" without disclosing that the automatic braking releases within seconds and will not hold the vehicle;

i. Failing, after sale, to provide the software remedy for the rollaway hazard that Toyota knew was available, through the Dealership or over the air; and

j. Failing to adequately test the Parking Support Brake, electronic parking brake, and driver-exit warning systems of the Subject Vehicle for the foreseeable driver-exit scenario prior to sale to the consuming public.

110. Toyota knew or should have known that consumers, including Plaintiff Ranna Zaboura, would suffer foreseeable injury as a result of its failures described above.

111. Prior to designing, selecting, inspecting, testing, manufacturing, assembling, equipping, marketing, distributing, and/or selling the Subject Vehicle, Toyota knew that there was a safer, technologically feasible alternative design that would have eliminated or minimized the risk of rollaway upon driver exit such as this one.

112. A defective aspect of the Subject Vehicle was a direct and proximate cause of the catastrophic injuries suffered by Plaintiff Ranna Zaboura, as alleged herein.

**COUNT II**
**(All Plaintiffs v. Defendants AAG-Cleveland, L.L.C. d/b/a Metro Lexus and Metro Lexus)**
**Ohio Revised Code §2307.78**

113. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

114. At all times relevant hereto, the Dealership was a supplier of the Subject Vehicle as defined in Ohio Revised Code §2307.71.

115. The Dealership owed a duty of due care to Plaintiff Ranna Zaboura and to any foreseeable user or operator of the Subject Vehicle to instruct and warn regarding the dangerous condition of the Subject Vehicle described herein.

116. The Dealership breached that duty and was negligent, pursuant to Ohio Revised Code §2307.78(A)(1), in one or more of the following respects:

a. Describing the Subject Vehicle's parking-assist and rear automatic-braking features at sale and delivery as systems that would stop the Subject Vehicle to avoid a collision without disclosing that the braking releases within seconds and that the Subject Vehicle would not secure itself upon driver exit;

b. Failing, as the Lexus-trained dealer that inspected, certified, delivered, and exclusively serviced the Subject Vehicle, to instruct Plaintiff Ranna Zaboura that the Subject Vehicle's only automatic rollaway protection depended upon Brake Hold, had to be switched on every trip, and did not operate in Reverse; and

c. Failing, at the Subject Vehicle's service visits, to advise Plaintiff Ranna Zaboura of, or to provide, any available update or countermeasure addressing rollaway upon driver exit.

117. The Subject Vehicle did not conform, when it left the control of the Dealership, to the Dealership's representations that it was a certified, inspected, like-new Lexus whose parking-assist and rear automatic-braking systems would stop the Subject Vehicle to avoid collisions, upon which Plaintiff Ranna Zaboura justifiably relied, and the Dealership is liable pursuant to Ohio Revised Code §2307.78(A)(2).

118. In the alternative, the Dealership is liable as if it were the manufacturer of the Subject Vehicle pursuant to Ohio Revised Code §2307.78(B)(1), to the extent Defendants TMC or TMMC, both foreign corporations, are not subject to judicial process in the State of Ohio or a judgment against them cannot be enforced, and pursuant to Ohio Revised Code §2307.78(B)(6), because the Dealership altered, modified, or failed to maintain the Subject Vehicle in the course

of reconditioning, certifying, and servicing it, and on any other ground enumerated in Ohio Revised Code §2307.78(B) that discovery reveals.

119. The Dealership's negligence and nonconformance were a direct and proximate cause of the catastrophic injuries suffered by Plaintiff Ranna Zaboura, as alleged herein.

**COUNT III**
**(Plaintiff George Zaboura v. All Defendants Other Than Medical Mutual of Ohio)**
**Loss of Consortium**

120. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

121. At all times relevant hereto, Plaintiff George Zaboura was, and continues to be, the lawful husband of Plaintiff Ranna Zaboura.

122. As a direct and proximate result of Defendants' conduct and the injuries to his wife, Plaintiff George Zaboura has been and will be deprived of the services, society, companionship, comfort, affection, consortium, and support of his wife, and has incurred and will incur related losses.

**COUNT IV**
**(All Plaintiffs v. All Defendants Other Than Medical Mutual of Ohio)**
**Punitive Damages, Ohio Revised Code §2307.80**

123. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

124. The harm for which Plaintiffs are entitled to recover compensatory damages in accordance with §2307, et seq. of the Ohio Revised Code was the result of misconduct of Defendants TMC, TMNA, TMS, TEMA, TMMC, and the Dealership that manifested a flagrant disregard of the safety of persons who might be harmed by the Subject Vehicle, including designing, manufacturing, certifying, and selling the Subject Vehicle with its automatic parking-

brake safeguard disabled by default and non-functional in Reverse after Toyota had publicly announced that safeguard for Model Year 2020 vehicles.

125. Pursuant to Ohio Revised Code §2307.80, Plaintiffs are entitled to recover punitive or exemplary damages from Defendants TMC, TMNA, TMS, TEMA, TMMC, and the Dealership in an amount to be determined by the jury.

## COUNT V

**(All Plaintiffs v. Defendant Medical Mutual of Ohio)**

126. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

127. A real, present, and justiciable controversy exists between Plaintiffs and Medical Mutual concerning the existence, validity, extent, and priority of Medical Mutual's claimed subrogation and reimbursement interest in any recovery in this action, including the application of Ohio Revised Code §2323.44; Medical Mutual's share of attorney fees and expenses; which payments relate to injuries caused by the incident; Plaintiffs' right to be made whole; the construction of the policy's subrogation and reimbursement provisions pursuant to Ohio Revised Code §§2721.03 and 2721.04; and the resulting allocation of any recovery.

128. The policy of insurance is in Medical Mutual's possession and will be produced in discovery, and for that reason it is not attached to this Complaint.

129. Speedy relief is necessary because Medical Mutual's claimed interest attaches to any judgment or settlement in this action.

130. Medical Mutual is named as a party defendant pursuant to Ohio Revised Code §2721.12(A) so that its claimed interest may be adjudicated in this action and it will be bound by the judgment.

131. Plaintiffs are entitled to a declaration pursuant to Ohio Revised Code §§2721.02 through 2721.06 of the parties' respective rights with respect to Medical Mutual's claimed interest, and to further relief pursuant to Ohio Revised Code §2721.09 as necessary to effectuate the declaration.

WHEREFORE, for Counts I and II, Plaintiff Ranna Zaboura prays for judgment against Defendants Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing Canada Inc., AAG-Cleveland, L.L.C. d/b/a Metro Lexus, and Metro Lexus, individually and collectively, jointly and severally, for compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), for a determination that her injuries fall within Ohio Revised Code §2315.18(B)(3), and for her costs herein, attorney fees, and pre- and post-judgment interest. For Count IV, Plaintiffs pray for judgment against the same Defendants, individually and collectively, jointly and severally, for punitive damages pursuant to Ohio Revised Code §2307.80 in an amount to be determined by the jury, together with attorney fees. For Count III, Plaintiff George Zaboura prays for judgment against the same Defendants, individually and collectively, jointly and severally, for compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), as well as his costs herein. For Count V, Plaintiffs pray for a declaration pursuant to Ohio Revised Code Chapter 2721 of the existence, validity, extent, and priority of any subrogation or reimbursement interest of Defendant Medical Mutual of Ohio in any recovery in this action, including all reductions and limitations required by Ohio Revised Code §2323.44, the policy, and Ohio law, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Kyle B. Melling*

**KYLE B. MELLING (#0091208)**
**JAMES A. LOWE (#0002495)**
**Lowe Trial Lawyers**
5875 Landerbrook Drive, Suite 220
Cleveland, OH 44124
Tel: (216) 781-2600 / Fax: (216) 781-2610
Email: Kyle@LoweFightWin.com
Email: James@LoweFightWin.com
*Counsel for Plaintiffs*

**W. CRAIG BASHEIN (#0034591)**
**Bashein & Bashein Co., L.P.A.**
50 Public Square, Terminal Tower, 35th Floor
Cleveland, Ohio 44113
Tel: (216) 771-3239
Email: cbashein@basheinlaw.com
*Co-Counsel for Plaintiffs*

## JURY DEMAND

A trial by jury is demanded on all issues.

Respectfully submitted,

*/s/ Kyle B. Melling*

**KYLE B. MELLING**
*Counsel for Plaintiffs*

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
09/22/2026
CT Log Number 553446563

## Service of Process Transmittal Summary

**TO:** Shawn Wilson, Assistant Manager
Toyota Legal One
6565 HEADQUARTERS DR
PLANO, TX 75024-5965

**RE:** **Process Served in Ohio**

**FOR:** Toyota Motor North America, Inc. (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: RANNA ZABOURA and GEORGE ZABOURA // To: Toyota Motor North America, Inc. |
| **CASE #:** | CV26146579 |
| **NATURE OF ACTION:** | Personal Injury - Vehicle Collision |
| **PROCESS SERVED ON:** | C T Corporation System, Columbus, OH |
| **DATE/METHOD OF SERVICE:** | By Traceable Mail on 09/22/2026 |
| **JURISDICTION SERVED:** | Ohio |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 09/22/2026, Expected Purge Date: 09/27/2026<br><br>Image SOP<br><br>Email Notification, Shawn Wilson shawn.wilson@toyota.com<br><br>Email Notification, Lee Anne Johnston lee.anne.johnston@toyota.com<br><br>Email Notification, John Gersch john.gersch@toyota.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>4400 Easton Commons Way<br>Suite 125<br>Columbus, OH 43219<br>8775647529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

United States Postal Service ®

CERTIFIED MAIL

FIRST-CLASS

US POSTAGE PITNEY BOWES

ZIP 44102 $ 011.60$^{0}$
02 7W
0008041111 SEP. 16. 2026

XW0376-000

NAILAH K. BYRD
1200 ONTARIO
CLEVELAND, OH 44113

Case# CV26146579

9214 8903 0179 8219 1504 90

TOYOTA MOTOR NORTH AMERICA, INC.
CO CT CORPORATION SYSTEM
4400 EASTON COMMONS WAY, SUITE 125
COLUMBUS OH 43219

# THE COURT OF COMMON PLEAS, CIVIL DIVISION
# CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

RANNA ZABOURA, ET AL.
**Plaintiff**

**V.**

TOYOTA MOTOR CORPORATION, ET AL
**Defendant**

**CASE NO.** CV26146579

**JUDGE** ASHLEY KILBANE

## SUMMONS

SUMC CM

**Notice ID:** 61997090

From: RANNA ZABOURA P1
19624 WINDING TRAIL
STRONGSVILLE OH 44149

Atty.: JAMES A LOWE
115 MAIN STREET
CHARDON, OH 44024

To: TOYOTA MOTOR NORTH AMERICA, INC. D2
CO CT CORPORATION SYSTEM
4400 EASTON COMMONS WAY, SUITE 125
COLUMBUS OH 43219

**NOTICE TO THE DEFENDANT:**

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff. You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.gov/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.

**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

**Date Sent:** 09/15/2026

By______________________
**Deputy**

CMSN130

# Cuyahoga County Clerk of Courts
## Nailah K. Byrd

**Multilingual Notice:**

You have been named as a defendant in this Court. You must file an answer within 28 days; if you fail to answer, the Court may enter judgment against you for the relief stated in the Complaint. Seek assistance from both an interpreter and an attorney. Your inability to understand, write, or speak English will not be a defense to possible judgment against you.

1. **Spanish (US)**
***Aviso multilingüe:

Este Tribunal lo ha declarado como acusado. Debe presentar una respuesta en un plazo de 28 días. Si no contesta en dicho plazo, el Tribunal podrá dictar sentencia en su contra por el amparo que se detalla en la demanda. Solicite la ayuda de un intérprete y de un abogado. Su incapacidad para comprender, escribir o hablar inglés no se considerará como defensa ante una posible sentencia en su contra.

2. **Somali**
***Ogeysiis luqadda badan ah:

Waxaa laguu magacaabay sida eedeysane gudaha Maxkamadan. Waa in aad ku soo gudbisaa jawaab 28 maalmood gudahood; haddii aad ku guuldareysto jawaabta, Maxkamada laga yaabo in ay gasho xukun adiga kaa soo horjeedo ee ka nasashada lagu sheegay Cabashada. Raadi caawinta ka timid labadaba turjubaanka iyo qareenka. Karti la'aantaada aad ku fahmo, ku qoro, ama ku hadasho Af Ingiriisiga ma noqon doonto difaacida xukunkaaga suuralka ah ee adiga kugu lidka ah.

3. **Russian**
***Уведомление на разных языках:

Вы были названы в качестве ответчика в данном суде. Вы должны предоставить ответ в течение 28 дней; если Ваш ответ не будет получен, суд может вынести решение против Вас и удовлетворить содержащиеся в жалобе требования. Воспользуйтесь услугами переводчика и адвоката. Тот факт, что Вы не понимаете английскую речь и не можете читать и писать по-английски, не является препятствием для возможного вынесения судебного решения против Вас.

4. **Arabic**
***ملاحظة متعددة اللغات:

لقد تم اعتبارك مدعى عليه في هذه المحكمة. يجب أن تقدم ردا خلال 28 يوما؛ وإذا لم تقم بالرد، فقد تصدر المحكمة حكما ضدك بالتعويض المنصوص عليه في هذه الشكوى القضائية. اطلب المساعدة من مترجم فوري ومحام. فلن تعد عدم قدرتك على فهم اللغة الإنجليزية أو كتابتها أو تحدثها دفاعا لك أمام الحكم المحتمل ضدك.

5. **Chinese (Simplified)**
***多語版本通知：

您在本法庭已被列为被告。您必须于 28 日内递交答辩状；如果没有递交答辩状，法庭会针对诉状中声明的补救措施对您作出不利判决。请向口译人员和律 师寻求帮助。您无法理解、书写或说英语的情况不能作为对您可能作出不利判决的辩护理由。

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

# Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**September 14, 2026 15:16**

By: KYLE B. MELLING 0091208

Confirmation Nbr. 3977689

RANNA ZABOURA, ET AL.

vs.

TOYOTA MOTOR CORPORATION, ET AL

CV 26 146579

**Judge:** ASHLEY KILBANE

**Pages Filed:** 26

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

| | | |
|---|---|---|
| **RANNA ZABOURA**<br>19624 Winding Trail<br>Strongsville, Ohio 44149,<br><br>and<br><br>**GEORGE ZABOURA**<br>19624 Winding Trail<br>Strongsville, Ohio 44149,<br><br>Plaintiffs,<br><br>v.<br><br>**TOYOTA MOTOR CORPORATION**<br>1 Toyota-Cho<br>Toyota City, Aichi Prefecture<br>Japan 471-8571,<br><br>and<br><br>**TOYOTA MOTOR NORTH AMERICA, INC.**<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219,<br><br>and<br><br>**TOYOTA MOTOR SALES, U.S.A., INC.**<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219,<br><br>and<br><br>**TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.**<br>6565 Headquarters Drive<br>Plano, Texas 75024,<br><br>and | ) | CASE NO.:<br><br>JUDGE<br><br><br><br><br><br><br><br><br><br><br><br><br>**<u>COMPLAINT</u>**<br><br>***JURY TRIAL DEMANDED*** |

**TOYOTA MOTOR MANUFACTURING CANADA INC.**
1055 Fountain Street North
Cambridge, Ontario N3H 4R7, Canada,

and

**AAG-CLEVELAND, L.L.C. d/b/a METRO LEXUS**
13600 Brookpark Rd.
Cleveland, Ohio 44135
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219,

and

**METRO LEXUS**
13600 Brookpark Rd.
Cleveland, Ohio 44135
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219,

and

**MEDICAL MUTUAL OF OHIO**
100 American Rd.
Cleveland, Ohio 44144
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219

Defendants.

NOW come Plaintiffs, Ranna Zaboura and George Zaboura, by and through their undersigned counsel, and file the following Complaint against Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing Canada Inc., AAG-Cleveland,

L.L.C. d/b/a Metro Lexus, Metro Lexus, and Medical Mutual of Ohio, and in support thereof aver as follows:

## INTRODUCTION

1. This is a products liability action under the Ohio Products Liability Act, Ohio Revised Code §2307.71, et seq.

2. On December 17, 2024, Plaintiff Ranna Zaboura's 2020 Lexus RX350 stopped itself and warned her of a hazard behind it.

3. As Plaintiff Ranna Zaboura stepped out to see what was behind her, the 2020 Lexus RX350 rolled backward and ran over her.

4. The 2020 Lexus RX350's rear automatic braking system is designed to release the brakes after approximately two seconds, or as soon as the driver touches the brake pedal, whether or not the driver is in a position to take back control of the vehicle.

5. At the time Plaintiff Ranna Zaboura stepped out, the 2020 Lexus RX350 knew that her seatbelt was unbuckled, her driver's door was open, and the transmission was in reverse.

6. Toyota designed the 2020 Lexus RX350 to use that information only to display a small "Shift to P" message, rather than to apply the electronic parking brake the vehicle already had.

7. Toyota has built an automatic parking brake that engages on driver exit into Lexus vehicles since 2007, and competing 2020 model year vehicles secured themselves automatically when the driver exited.

8. In June 2019, Toyota publicly announced that "starting from Model Year 2020" it would phase in an "Automatic Park" feature to "help reduce the risk of roll-away." The 2020 Lexus RX350, a Model Year 2020 Lexus with an electronic parking brake, did not have that feature.

9. Plaintiffs bring claims against Toyota for defective design, defective manufacture, inadequate warning, and nonconformance with representation under Ohio Revised Code §§2307.74 through 2307.77; against the Dealership that certified, sold, and serviced the 2020 Lexus RX350 as a supplier under Ohio Revised Code §2307.78; for punitive damages under Ohio Revised Code §2307.80; and for Plaintiff George Zaboura's loss of consortium.

10. Medical Mutual of Ohio is named solely so that its claimed subrogation interest in any recovery may be determined in this action.

**PARTIES**

11. At all times relevant hereto, Plaintiff Ranna Zaboura is and was an adult individual residing at 19624 Winding Trail, Strongsville, Ohio 44149.

12. At all times relevant hereto, Plaintiff George Zaboura is and was an adult individual residing at 19624 Winding Trail, Strongsville, Ohio 44149, and is and was the husband of Plaintiff Ranna Zaboura.

13. At all times relevant hereto, Plaintiff Ranna Zaboura was the owner and operator of a 2020 Lexus RX350 (hereinafter referred to as the "2020 Lexus RX350" or the "Subject Vehicle") (VIN: 2T2JZMDA0LC223360).

14. Defendant Toyota Motor Corporation (hereinafter "TMC") is a corporation organized under the laws of Japan with its principal place of business at 1 Toyota-Cho, Toyota City, Aichi Prefecture, Japan.

15. Defendant TMC is a manufacturer as defined in Ohio Revised Code §2307.71, which designed, engineered, tested, produced, created, made, constructed, manufactured, and/or assembled the Subject Vehicle and its braking, parking-brake, and driver-assistance systems.

16. Defendant Toyota Motor North America, Inc. (hereinafter "TMNA") is a corporation organized under the laws of the State of California with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. TMNA is registered to do business in the State of Ohio (Ohio Secretary of State No. 3910589) and has designated CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219, as its statutory agent.

17. Defendant TMNA directs Toyota's North American sales, engineering, and manufacturing operations and issued the June 12, 2019 "Automatic Park" announcement described within. Defendant TMNA is a manufacturer as defined in Ohio Revised Code §2307.71.

18. Defendant Toyota Motor Sales, U.S.A., Inc. (hereinafter "TMS") is a corporation organized under the laws of the State of California with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. TMS is registered to do business in the State of Ohio (Ohio Secretary of State No. 754945) and has designated CT Corporation System as its statutory agent.

19. Defendant TMS, through its Lexus division, imported and distributed the Subject Vehicle, published its owner's manual and marketing materials, operates the Lexus certified pre-owned ("L/Certified") program, and distributes Lexus vehicles to franchised dealers throughout the State of Ohio and specifically Cuyahoga County. Defendant TMS is a manufacturer and a supplier as defined in Ohio Revised Code §2307.71.

20. Defendant Toyota Motor Engineering & Manufacturing North America, Inc. (hereinafter "TEMA") is, upon information and belief, a corporation organized under the laws of the Commonwealth of Kentucky with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. TEMA engineers, designs, tests, and validates Toyota- and Lexus-brand

vehicles and their component systems for the North American market. Defendant TEMA is a manufacturer as defined in Ohio Revised Code §2307.71.

21. Defendant Toyota Motor Manufacturing Canada Inc. (hereinafter "TMMC") is a corporation organized under the laws of Canada with its principal place of business at 1055 Fountain Street North, Cambridge, Ontario N3H 4R7, Canada. TMMC assembled the Subject Vehicle at its Cambridge, Ontario plant in November 2019. Defendant TMMC is a manufacturer as defined in Ohio Revised Code §2307.71.

22. Defendants TMC, TMNA, TMS, TEMA, and TMMC are hereinafter collectively referred to as "Toyota."

23. At all times material hereto, Toyota designed, tested, manufactured, marketed, advertised, sold, distributed, and/or supplied motor vehicles, including the Subject Vehicle, throughout the United States, including in the State of Ohio and, specifically, Cuyahoga County.

24. At all times material hereto, Toyota conducted and continues to conduct substantial and continuous business in the State of Ohio and, specifically, Cuyahoga County, through a network of franchised Toyota and Lexus dealers, including the Dealership described below. Toyota derives substantial revenue from business within the State of Ohio and, specifically, Cuyahoga County.

25. The division of design, engineering, manufacturing, distribution, and marketing responsibilities among the Toyota entities is known to Toyota and not to Plaintiffs. Plaintiffs therefore allege in the alternative that each Toyota entity performed each of those functions and acted as the agent, joint venturer, and/or alter ego of the others with respect to the Subject Vehicle.

26. Defendant AAG-Cleveland, L.L.C. d/b/a Metro Lexus (hereinafter the "Dealership") is a limited liability company organized under the laws of the State of Delaware and

registered to do business in the State of Ohio (Ohio Secretary of State No. 1473347), with its principal place of business located at 13600 Brookpark Road, Brook Park, Cuyahoga County, Ohio, and has designated CT Corporation System as its statutory agent. Upon information and belief, one or more members of the Dealership are citizens of the State of Ohio.

27. At all times relevant hereto, the Dealership owned and operated the franchised Lexus dealership known as Metro Lexus, located at 13600 Brookpark Road, Brook Park, Cuyahoga County, Ohio, under Ohio registered trade name No. 1226201.

28. Defendant Metro Lexus is the registered Ohio trade name under which the Dealership sold and serviced the Subject Vehicle and is named herein pursuant to Ohio Revised Code §1329.10(C). Metro Lexus and AAG-Cleveland, L.L.C. are one and the same party, and references herein to the "Dealership" include both.

29. The Dealership sold, inspected, reconditioned, certified, and serviced the Subject Vehicle and is a supplier as defined in Ohio Revised Code §2307.71.

30. Defendant Medical Mutual of Ohio (hereinafter "Medical Mutual") is a mutual insurance company organized under the laws of the State of Ohio (Ohio Secretary of State No. 189155) with its principal place of business in Cleveland, Cuyahoga County, Ohio, and has designated CT Corporation System as its statutory agent. Medical Mutual is a citizen of the State of Ohio.

31. Medical Mutual insured Plaintiff Ranna Zaboura's health-care expenses under a policy of insurance issued in the State of Ohio, has paid medical expenses arising from the incident described within, and claims a right of subrogation and reimbursement from any recovery in this action.

## JURISDICTION AND VENUE

32. At all times relevant hereto, Toyota and the Dealership were and are performing activities and services, and were soliciting other activities and services, within Cuyahoga County, Ohio, and products manufactured, distributed, sold, or serviced by or on behalf of said parties, including the Subject Vehicle, were and are sold, used, and consumed in Cuyahoga County, Ohio, in the ordinary course of their respective trade or business. Further, the tortious act occurred in the State of Ohio.

33. The Subject Vehicle was delivered new to a Lexus dealer in Cuyahoga County, Ohio, was sold new in Ohio, was sold again in Ohio to Plaintiff Ranna Zaboura, and was serviced, registered, and driven in Ohio. Plaintiffs' claims arise out of and relate to Toyota's and the Dealership's activities in the State of Ohio.

34. This Court has personal jurisdiction over all Defendants pursuant to Ohio Revised Code §2307.382 and Civ.R. 4.3(A). Defendants TMC and TMMC may be served pursuant to the Hague Service Convention and Civ.R. 4.3 and 4.5.

35. This Court has subject-matter jurisdiction pursuant to Ohio Revised Code §2305.01, as the amount in controversy exceeds $25,000, exclusive of interest and costs, and pursuant to Ohio Revised Code §§2721.02 and 2721.03 as to the declaratory relief sought in Count V.

36. Venue is proper in Cuyahoga County, Ohio, pursuant to Civ.R. 3(C)(2), (3), and (6), as the Dealership and Medical Mutual have their principal places of business in Cuyahoga County, the Subject Vehicle was sold to Plaintiff Ranna Zaboura in Cuyahoga County, and the incident described within occurred in Cuyahoga County.

## STATEMENT OF MATERIAL FACTS

37. The Subject Vehicle was assembled by Defendant TMMC in Cambridge, Ontario, in November 2019, was distributed by Defendant TMS, and was delivered new to Metro Lexus in Brook Park, Ohio.

38. The Subject Vehicle was first sold or leased through Metro Lexus on or about November 26, 2019.

39. On or about September 2, 2022, Plaintiff Ranna Zaboura purchased the Subject Vehicle from the Dealership as a Lexus-certified ("L/Certified") pre-owned vehicle.

40. Prior to the sale, the Dealership inspected, reconditioned, and certified the Subject Vehicle under the L/Certified program and represented it to Plaintiff Ranna Zaboura as a certified, like-new Lexus.

41. The Dealership performed all service on the Subject Vehicle from the date of sale through September 2024.

42. Plaintiff Ranna Zaboura has owned Lexus vehicles for years and chose them because Toyota advertised, and she believed, that Lexus vehicles were among the safest on the road.

43. The Subject Vehicle's window label represented that the Subject Vehicle was equipped with "Lexus Safety System+ 2.0," including a "Pre-Collision System with Pedestrian Detection," and with "Blind Spot Monitor with Intuitive Parking Assist, Panoramic View Monitor, and Rear Cross Traffic Braking."

44. Toyota marketed and advertised Lexus Safety System+ 2.0 as "Advanced Safety for Peace of Mind" in its brochures, on its website, and in its advertising. Upon information and

belief, Toyota approved these representations and intended consumers, including Plaintiff Ranna Zaboura, to rely upon them.

45. Plaintiff Ranna Zaboura saw and relied upon the window label, the L/Certified materials, Toyota's marketing, and the Dealership's description of the Subject Vehicle's safety features in purchasing and operating the Subject Vehicle.

46. The Subject Vehicle was equipped with a conventional lever-type gear selector with Park, Reverse, Neutral, and Drive positions, and with a keyless push-button ignition.

47. The Subject Vehicle was equipped with an electronic parking brake (hereinafter "EPB") that is applied and released by electric motors under the control of the Subject Vehicle's computer. The Subject Vehicle's software can, and in some circumstances does, apply the EPB automatically without any action by the driver.

48. The Subject Vehicle was equipped with a rear automatic-braking system that Toyota calls the Parking Support Brake (hereinafter "PKSB"), consisting of Intuitive Parking Assist, Intelligent Clearance Sonar, and Rear Cross Traffic Braking.

49. When the Subject Vehicle is backing slowly and its sensors detect an object behind it, the PKSB sounds an alarm, displays a warning, reduces engine power, and automatically applies the brakes to prevent or mitigate a collision.

50. After the PKSB detects a hazard and stops the Subject Vehicle, it releases the brake after approximately 2 seconds, or as soon as the driver depresses the brake pedal.

51. The PKSB does not determine whether the driver is still seated, belted, or behind a closed door before it releases the brakes and returns control of the Subject Vehicle to the driver. Further, the PKSB does not warn the driver that it is returning control to the driver, nor engage in any check to confirm that the driver is prepared for control to be returned.

52. The Subject Vehicle continuously monitors whether the driver's seatbelt is buckled, whether the driver's door is open, the position of the gear selector, whether the Subject Vehicle is moving, whether the brake pedal is depressed, and whether the EPB is applied.

53. When the engine is on, the transmission is not in Park, the Subject Vehicle is stopped, and the driver's door is opened, the Subject Vehicle's software displays the message "Shift to P before exiting vehicle" in text on the instrument cluster and sounds a buzzer. Toyota's service information identifies vehicle rollaway as the hazard this message addresses.

54. Toyota's owner's manual for the Subject Vehicle states that "[a] buzzer sounds the first time a message is shown on the multi-information display," and, on the same page that describes the "Shift to P Before Exiting Vehicle" message, states: "In some cases, the buzzer may not be heard due to being in a noisy location or audio sound."

55. Under those same conditions, the Subject Vehicle does not apply the EPB, does not hold the service brakes, and does not shift the transmission to Park.

56. The Subject Vehicle was equipped with a driver-selectable feature called "Brake Hold," which, when the driver turns it on, holds the brakes after a stop so the driver can remove a foot from the brake pedal. When Brake Hold is on and holding the Subject Vehicle, the software automatically applies the EPB if the driver's door is opened or the driver's seatbelt is unbuckled.

57. Brake Hold is off by default and turns off each time the Subject Vehicle is shut down, so that the driver must press the Brake Hold button on every trip. Toyota describes Brake Hold to owners as a convenience for waiting in traffic, not as a safety feature.

58. Brake Hold does not operate when the transmission is in Reverse.

59. The Subject Vehicle therefore provided no automatic protection against rollaway to a driver exiting the Subject Vehicle while it was in Reverse, whether or not the driver had turned Brake Hold on.

60. On or about December 17, 2024, at approximately 9:00 a.m., Plaintiff Ranna Zaboura was backing the Subject Vehicle slowly out of a parking space in the Giant Eagle parking lot located at 15919 Pearl Road, Strongsville, Cuyahoga County, Ohio. The weather was clear and the pavement was dry and essentially level.

61. As Plaintiff Ranna Zaboura backed, an object, which Plaintiffs now believe was an unattended shopping cart, rolled behind the Subject Vehicle.

62. The PKSB detected the object, sounded its alarm, displayed a red collision warning on the instrument panel and the infotainment screen, and abruptly stopped the Subject Vehicle.

63. Plaintiff Ranna Zaboura was startled and reasonably believed that the Subject Vehicle had stopped itself for a hazard behind it and would remain stopped. She did not know what the Subject Vehicle had detected or whether she had hit a person, a child, or a cart, and she quickly placed her foot on the brake, unbuckled her seatbelt, opened the driver's door, and began to step out to find out.

64. Plaintiff Ranna Zaboura did not move the gear selector to Park. The Subject Vehicle remained running and in Reverse.

65. The PKSB's braking released, either because approximately two seconds had elapsed or because Plaintiff Ranna Zaboura's application of the brake pedal cancelled it, as Toyota designed it to do.

66. The EPB did not apply. The Subject Vehicle did not shift to Park.

67. As Plaintiff Ranna Zaboura's foot left the brake pedal and she stepped out, the Subject Vehicle immediately moved backward under engine power.

68. The open driver's door knocked Plaintiff Ranna Zaboura to the ground, and the Subject Vehicle's left front wheel rolled over her entire body from her feet to right shoulder.

69. The Subject Vehicle continued backward across the parking lot until it struck a parked, unoccupied vehicle and pushed that vehicle into a cart corral.

70. When Strongsville police officers arrived minutes later, the Subject Vehicle's reverse lights were still illuminated.

71. Plaintiff Ranna Zaboura lay on the pavement, conscious and in severe pain, until help arrived. Plaintiff George Zaboura arrived at the scene before the ambulance and found his wife crushed on the pavement.

72. As a direct and proximate result of the defective aspects of the Subject Vehicle, Plaintiff Ranna Zaboura suffered catastrophic injuries, including but not limited to an unstable "open-book" pelvic-ring fracture with bilateral acetabular and pubic rami fractures, rupture of the pubic symphysis, and bilateral sacroiliac dislocation; fractures of the right second through seventh ribs; a left ankle fracture; and a perineal hematoma with active arterial hemorrhage and hemorrhagic shock.

73. Plaintiff Ranna Zaboura required emergency arterial embolization, blood transfusions, surgical fixation of her pelvis and ribs with placement of a chest tube, ten days of hospitalization including intensive care, two weeks of inpatient rehabilitation, months in a wheelchair and hospital bed at home, and continuing therapy.

74. Plaintiff Ranna Zaboura has suffered permanent impairment, including chronic pelvic-floor dysfunction with urinary incontinence and bowel dysfunction, neuropathic pain, impaired mobility, scarring and disfigurement, and psychological trauma.

75. It was foreseeable to Toyota that a driver who had been stopped and warned by the PKSB would step out of the Subject Vehicle to look at what was behind it.

76. It was foreseeable to Toyota, and was documented in published human-factors research known to Toyota, that drivers who step out of a stopped vehicle frequently keep a foot on the brake pedal until they are out of the door and begin moving away before realizing the transmission is not in Park.

77. In fact, because Toyota knew of the rollaway hazard presented by drivers exiting vehicles that are not in Park, on June 12, 2019, prior to the Subject Vehicle's manufacture, Defendant TMNA issued a press release titled "Toyota Plans to Deploy Automatic Engine Shut Off and Automatic Park Features to Vehicle Line Up," which stated:

> "[S]tarting from Model Year 2020, Toyota will begin to phase in Automatic Park, which is designed to help reduce the risk of roll-away. The Automatic Park feature will be available in vehicles with electronic means of shifting and/or applying the parking brake, and is designed to automatically shift the vehicle into the 'park' position and/or apply the electronic parking brake, in the event the driver exits the vehicle without placing the vehicle in 'park.'"

78. The Subject Vehicle was built in November 2019, five months after the press release. The Subject Vehicle is a Model Year 2020 vehicle equipped with an electronic parking brake.

79. The Subject Vehicle was not equipped with the Automatic Park feature described in Toyota's June 12, 2019 press release.

80. The Subject Vehicle had all of the equipment required to apply the electronic parking brake, in the event that the driver exits the vehicle without placing the vehicle in park. This includes a seat belt sensor, a door sensor, a gearshift sensor and an electronic parking brake.

81. Toyota has applied the EPB automatically upon door-open or seatbelt-off within Brake Hold since the 2007 Lexus LS460, and has automatically shifted its electronic-shifter hybrid vehicles to Park upon driver exit since at least model year 2011.

82. For model year 2021, Toyota released the Toyota Sienna Hybrid, which, like the Subject Vehicle, combines a lever-type gear selector with an electronic parking brake, with a "Parking Brake Automatic Lock" function that applies the EPB automatically when the driver exits with the transmission out of Park.

83. Upon information and belief, the Lexus RX received an equivalent default automatic parking-brake safeguard for model year 2023.

84. By model year 2020, vehicles that automatically secured themselves when the driver exited out of Park, without any driver opt-in, were in production across the industry, including the Jeep Grand Cherokee and Cherokee, Ram 1500, Dodge Durango, Chrysler Pacifica, Ford Explorer, Lincoln Aviator, and Tesla vehicles, and models from Mercedes-Benz, Volvo, Hyundai, Kia, and Genesis.

85. Upon information and belief, in 2024 Kia added an automatic EPB-on-exit safeguard to more than 400,000 already-sold model-year 2020 through 2024 Telluride vehicles, which, like the Subject Vehicle, have a lever-type shifter and an EPB, by software update in NHTSA Recall No. 24V-214.

86. Toyota could have provided the same safeguard to the Subject Vehicle at any time before December 17, 2024, including through the Dealership at a service visit or over the air through the Subject Vehicle's connected-services system.

87. Toyota knew or should have known that the Subject Vehicle was defective if it did not secure itself when the driver exited out of Park, as other similar incidents had been reported to Toyota. Before the Subject Vehicle was sold, NHTSA's complaint database contained hundreds of owner reports of Toyota and Lexus rollaways, including reports of injuries and deaths, and NHTSA data showed vehicle rollaway deaths rising sharply.

88. In 2016, FCA US LLC recalled more than one million vehicles (NHTSA Recall No. 16V-240) after concluding that chimes and visual alerts had "not stopped some" drivers from exiting with the transmission out of Park and that the absence of an automatic countermeasure was a safety defect. The warning strategy FCA found defective in 2016 is materially the same as the warning strategy Toyota used on the Subject Vehicle.

89. Toyota has recalled other Toyota and Lexus vehicles, including in 2017, 2022, and 2025 (NHTSA Recall Nos. 17V-717, 22V-661, and 25V-656), because their electronic parking brakes could fail to engage, and in those recalls warned owners that a vehicle left out of Park without the parking brake set "could rollaway."

90. Upon information and belief, Toyota designed its vehicles' computers to record an event labeled "Driver Exited Vehicle When Shift Position Wasn't P."

91. Upon information and belief, Toyota engineers have testified under oath in other rollaway litigation that automatic application of the electronic parking brake upon driver exit was technically feasible as early as 2007 and that driver safety is more important than the annoyance of an unwanted parking-brake application.

92. Plaintiff Ranna Zaboura's injuries constitute permanent and substantial physical deformity and permanent loss of use of a bodily organ system within the meaning of Ohio Revised Code §2315.18(B)(3).

93. Pursuant to Ohio Revised Code §2307.80, Toyota's manufacture and sale of the Subject Vehicle with its automatic parking-brake safeguard disabled by default and non-functional in Reverse, after publicly announcing that safeguard for Model Year 2020 vehicles and while marketing the Subject Vehicle's automatic braking as "Advanced Safety for Peace of Mind," manifested a flagrant disregard of the safety of persons, including Plaintiff Ranna Zaboura, who might be harmed by the Subject Vehicle.

94. At all times relevant hereto, Plaintiff Ranna Zaboura's health-care expenses were insured by Medical Mutual under a group policy of insurance issued in the State of Ohio. Upon information and belief, the policy is fully insured by Medical Mutual and is not a self-funded employee-benefit plan.

95. Plaintiffs' claim against Medical Mutual arises solely under Ohio law, including Ohio Revised Code Chapter 2721, Ohio Revised Code §2323.44, and the terms of the policy.

96. Medical Mutual has paid medical expenses arising from the incident in an amount believed to exceed $200,000 and has asserted a right of subrogation and reimbursement from any recovery Plaintiffs obtain in this action.

97. Plaintiffs contend that any interest of Medical Mutual is subject to the limitations of Ohio Revised Code §2323.44, including proportional diminution where Plaintiffs' recovery is less than the full value of their damages; is subject to Medical Mutual's proportionate share of attorney fees and expenses; is limited to payments for treatment of injuries caused by the incident;

is subordinate to Plaintiffs' right to be made whole; and is governed by the terms of the Ohio policy.

98. The Subject Vehicle has been preserved in Plaintiffs' counsel's custody. Plaintiffs demand that Defendants preserve all data recorded or transmitted by the Subject Vehicle and all design, testing, failure-mode, field-report, complaint, warranty, recall, and technical-service records relating to the Parking Support Brake, electronic parking brake, Brake Hold, "Shift to P" warning, and Automatic Park systems.

99. No Federal Motor Vehicle Safety Standard requires, addresses, or prohibits an automatic parking-brake or shift-to-Park safeguard triggered by driver exit. FMVSS 114 imposes only minimum, key-based rollaway-prevention requirements, and 49 U.S.C. §30103(e) preserves liability notwithstanding compliance with a federal standard.

## <u>COUNT I</u>
### (All Plaintiffs v. Defendants TMC, TMNA, TMS, TEMA, and TMMC)
### Ohio Revised Code §2307, et seq.

100. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

101. At all times relevant hereto, Toyota was engaged in the business of designing, developing, manufacturing, testing, engineering, approving, marketing, promoting, assembling, equipping, inspecting, labeling, advertising, distributing, selling, and supplying motor vehicles and the component parts of motor vehicles, including the Subject Vehicle, for use by the consuming public in the State of Ohio and throughout the world.

102. At all times relevant hereto, the dangerous propensities of the Subject Vehicle were known to Toyota, or were reasonably and scientifically knowable to it, through appropriate research and testing by known methods, at the time it designed, developed, manufactured, tested,

engineered, approved, marketed, promoted, advertised, distributed, and sold the Subject Vehicle to the consuming public, including consumers in the State of Ohio, but were not known to end users or consumers, including Plaintiff Ranna Zaboura.

103. At the time the Subject Vehicle left the control of Toyota, it was defective in design and manufacture and unreasonably dangerous to a person who might reasonably be expected to use it in a foreseeable manner.

104. The risks of the design of the Subject Vehicle outweighed the benefits, and accordingly the Subject Vehicle was defective in its design pursuant to Ohio Revised Code §2307.75. At all times relevant, a practical and technically feasible alternative design was available that would have prevented the harm for which Plaintiffs seek to recover compensatory damages without substantially impairing the usefulness or intended purpose of the Subject Vehicle.

105. The Subject Vehicle was defective in manufacture pursuant to Ohio Revised Code §2307.74 because, upon information and belief, its PKSB, EPB, or related components or software deviated in a material way from Toyota's design specifications or performance standards, or from otherwise identical units.

106. The Subject Vehicle was defective by reason of Toyota's failure to provide adequate warning or instruction pursuant to Ohio Revised Code §2307.76, because Toyota knew or, in the exercise of reasonable care, should have known of the risks described herein and failed to provide the warning or instruction, at the time of marketing and thereafter, that a manufacturer exercising reasonable care would have provided, given the nature and magnitude of those risks, the likely lack of awareness of them by consumers and users of the Subject Vehicle, and the likelihood that they would cause harm. Those risks were not open and obvious and were not matters of common knowledge.

107. The Subject Vehicle was defective because it did not conform, when it left the control of Toyota, to representations made by Toyota with respect to its character, quality, and/or safety, pursuant to Ohio Revised Code §2307.77, upon which Plaintiff Ranna Zaboura justifiably relied.

108. The Subject Vehicle was in a defective condition at the time it left the possession and control of Toyota and was not substantially changed or altered prior to the time of the incident.

109. Specifically, Toyota, by its divisions, subdivisions, agents, servants, workmen, and/or employees, is strictly liable under Ohio Products Liability law for one or more of the following reasons:

a. Designing, manufacturing, distributing, and/or selling the Subject Vehicle with a Parking Support Brake that stops the vehicle, alarms the driver, and then releases the brakes within approximately two seconds or upon brake application without any means of securing the vehicle if the driver is exiting;

b. Failing to design, manufacture, distribute, and/or sell the Subject Vehicle with a default automatic application of the electronic parking brake, or an automatic shift to Park, upon driver-exit indicators in every gear, including Reverse;

c. Confining the Subject Vehicle's only automatic rollaway protection to the optional Brake Hold feature, which is off by default, must be re-enabled on every trip, and does not operate in Reverse;

d. Failing to equip the Subject Vehicle, a Model Year 2020 vehicle with an electronic parking brake, with the Automatic Park feature Toyota publicly announced for Model Year 2020 vehicles on June 12, 2019;

e. Failing to install a technologically and economically feasible rollaway safeguard on the Subject Vehicle that Toyota had used in its own vehicles since 2007 and that competing 2020 vehicles included as standard;

f. Failing to provide sufficient warnings as to the reasonably foreseeable dangers in the use or operation of the Subject Vehicle, including that the Parking Support Brake releases within seconds, that the Subject Vehicle will not secure itself upon driver exit, and that Brake Hold provides no protection in Reverse;

g. Designing the "Shift to P" warning so that it appears in small text outside the view of an exiting driver, with a buzzer that Toyota concedes in its own manual "may not be heard";

h. Marketing the Subject Vehicle's automatic-braking and parking-assist systems as "Advanced Safety for Peace of Mind" without disclosing that the automatic braking releases within seconds and will not hold the vehicle;

i. Failing, after sale, to provide the software remedy for the rollaway hazard that Toyota knew was available, through the Dealership or over the air; and

j. Failing to adequately test the Parking Support Brake, electronic parking brake, and driver-exit warning systems of the Subject Vehicle for the foreseeable driver-exit scenario prior to sale to the consuming public.

110. Toyota knew or should have known that consumers, including Plaintiff Ranna Zaboura, would suffer foreseeable injury as a result of its failures described above.

111. Prior to designing, selecting, inspecting, testing, manufacturing, assembling, equipping, marketing, distributing, and/or selling the Subject Vehicle, Toyota knew that there was a safer, technologically feasible alternative design that would have eliminated or minimized the risk of rollaway upon driver exit such as this one.

112. A defective aspect of the Subject Vehicle was a direct and proximate cause of the catastrophic injuries suffered by Plaintiff Ranna Zaboura, as alleged herein.

**COUNT II**
**(All Plaintiffs v. Defendants AAG-Cleveland, L.L.C. d/b/a Metro Lexus and Metro Lexus)**
**Ohio Revised Code §2307.78**

113. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

114. At all times relevant hereto, the Dealership was a supplier of the Subject Vehicle as defined in Ohio Revised Code §2307.71.

115. The Dealership owed a duty of due care to Plaintiff Ranna Zaboura and to any foreseeable user or operator of the Subject Vehicle to instruct and warn regarding the dangerous condition of the Subject Vehicle described herein.

116. The Dealership breached that duty and was negligent, pursuant to Ohio Revised Code §2307.78(A)(1), in one or more of the following respects:

a. Describing the Subject Vehicle's parking-assist and rear automatic-braking features at sale and delivery as systems that would stop the Subject Vehicle to avoid a collision without disclosing that the braking releases within seconds and that the Subject Vehicle would not secure itself upon driver exit;

b. Failing, as the Lexus-trained dealer that inspected, certified, delivered, and exclusively serviced the Subject Vehicle, to instruct Plaintiff Ranna Zaboura that the Subject Vehicle's only automatic rollaway protection depended upon Brake Hold, had to be switched on every trip, and did not operate in Reverse; and

c. Failing, at the Subject Vehicle's service visits, to advise Plaintiff Ranna Zaboura of, or to provide, any available update or countermeasure addressing rollaway upon driver exit.

117. The Subject Vehicle did not conform, when it left the control of the Dealership, to the Dealership's representations that it was a certified, inspected, like-new Lexus whose parking-assist and rear automatic-braking systems would stop the Subject Vehicle to avoid collisions, upon which Plaintiff Ranna Zaboura justifiably relied, and the Dealership is liable pursuant to Ohio Revised Code §2307.78(A)(2).

118. In the alternative, the Dealership is liable as if it were the manufacturer of the Subject Vehicle pursuant to Ohio Revised Code §2307.78(B)(1), to the extent Defendants TMC or TMMC, both foreign corporations, are not subject to judicial process in the State of Ohio or a judgment against them cannot be enforced, and pursuant to Ohio Revised Code §2307.78(B)(6), because the Dealership altered, modified, or failed to maintain the Subject Vehicle in the course

of reconditioning, certifying, and servicing it, and on any other ground enumerated in Ohio Revised Code §2307.78(B) that discovery reveals.

119. The Dealership's negligence and nonconformance were a direct and proximate cause of the catastrophic injuries suffered by Plaintiff Ranna Zaboura, as alleged herein.

**COUNT III**
**(Plaintiff George Zaboura v. All Defendants Other Than Medical Mutual of Ohio)**
**Loss of Consortium**

120. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

121. At all times relevant hereto, Plaintiff George Zaboura was, and continues to be, the lawful husband of Plaintiff Ranna Zaboura.

122. As a direct and proximate result of Defendants' conduct and the injuries to his wife, Plaintiff George Zaboura has been and will be deprived of the services, society, companionship, comfort, affection, consortium, and support of his wife, and has incurred and will incur related losses.

**COUNT IV**
**(All Plaintiffs v. All Defendants Other Than Medical Mutual of Ohio)**
**Punitive Damages, Ohio Revised Code §2307.80**

123. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

124. The harm for which Plaintiffs are entitled to recover compensatory damages in accordance with §2307, et seq. of the Ohio Revised Code was the result of misconduct of Defendants TMC, TMNA, TMS, TEMA, TMMC, and the Dealership that manifested a flagrant disregard of the safety of persons who might be harmed by the Subject Vehicle, including designing, manufacturing, certifying, and selling the Subject Vehicle with its automatic parking-

brake safeguard disabled by default and non-functional in Reverse after Toyota had publicly announced that safeguard for Model Year 2020 vehicles.

125. Pursuant to Ohio Revised Code §2307.80, Plaintiffs are entitled to recover punitive or exemplary damages from Defendants TMC, TMNA, TMS, TEMA, TMMC, and the Dealership in an amount to be determined by the jury.

**COUNT V**

**(All Plaintiffs v. Defendant Medical Mutual of Ohio)**

126. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

127. A real, present, and justiciable controversy exists between Plaintiffs and Medical Mutual concerning the existence, validity, extent, and priority of Medical Mutual's claimed subrogation and reimbursement interest in any recovery in this action, including the application of Ohio Revised Code §2323.44; Medical Mutual's share of attorney fees and expenses; which payments relate to injuries caused by the incident; Plaintiffs' right to be made whole; the construction of the policy's subrogation and reimbursement provisions pursuant to Ohio Revised Code §§2721.03 and 2721.04; and the resulting allocation of any recovery.

128. The policy of insurance is in Medical Mutual's possession and will be produced in discovery, and for that reason it is not attached to this Complaint.

129. Speedy relief is necessary because Medical Mutual's claimed interest attaches to any judgment or settlement in this action.

130. Medical Mutual is named as a party defendant pursuant to Ohio Revised Code §2721.12(A) so that its claimed interest may be adjudicated in this action and it will be bound by the judgment.

131. Plaintiffs are entitled to a declaration pursuant to Ohio Revised Code §§2721.02 through 2721.06 of the parties' respective rights with respect to Medical Mutual's claimed interest, and to further relief pursuant to Ohio Revised Code §2721.09 as necessary to effectuate the declaration.

WHEREFORE, for Counts I and II, Plaintiff Ranna Zaboura prays for judgment against Defendants Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing Canada Inc., AAG-Cleveland, L.L.C. d/b/a Metro Lexus, and Metro Lexus, individually and collectively, jointly and severally, for compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), for a determination that her injuries fall within Ohio Revised Code §2315.18(B)(3), and for her costs herein, attorney fees, and pre- and post-judgment interest. For Count IV, Plaintiffs pray for judgment against the same Defendants, individually and collectively, jointly and severally, for punitive damages pursuant to Ohio Revised Code §2307.80 in an amount to be determined by the jury, together with attorney fees. For Count III, Plaintiff George Zaboura prays for judgment against the same Defendants, individually and collectively, jointly and severally, for compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), as well as his costs herein. For Count V, Plaintiffs pray for a declaration pursuant to Ohio Revised Code Chapter 2721 of the existence, validity, extent, and priority of any subrogation or reimbursement interest of Defendant Medical Mutual of Ohio in any recovery in this action, including all reductions and limitations required by Ohio Revised Code §2323.44, the policy, and Ohio law, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Kyle B. Melling*

**KYLE B. MELLING (#0091208)**
**JAMES A. LOWE (#0002495)**
**Lowe Trial Lawyers**
5875 Landerbrook Drive, Suite 220
Cleveland, OH 44124
Tel: (216) 781-2600 / Fax: (216) 781-2610
Email: Kyle@LoweFightWin.com
Email: James@LoweFightWin.com
*Counsel for Plaintiffs*

**W. CRAIG BASHEIN (#0034591)**
**Bashein & Bashein Co., L.P.A.**
50 Public Square, Terminal Tower, 35th Floor
Cleveland, Ohio 44113
Tel: (216) 771-3239
Email: cbashein@basheinlaw.com
*Co-Counsel for Plaintiffs*

**JURY DEMAND**

A trial by jury is demanded on all issues.

Respectfully submitted,

*/s/ Kyle B. Melling*

**KYLE B. MELLING**
*Counsel for Plaintiffs*

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
09/22/2026
CT Log Number 553446555

## Service of Process Transmittal Summary

**TO:** Shawn Wilson, Assistant Manager
Toyota Legal One
6565 HEADQUARTERS DR
PLANO, TX 75024-5965

**RE:** **Process Served in Ohio**

**FOR:** Toyota Motor Sales, U.S.A., Inc. (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:** Re: RANNA ZABOURA AND GEORGE ZABOURA // To: Toyota Motor Sales, U.S.A., Inc.

**CASE #:** CV26146579

**NATURE OF ACTION:** Personal Injury - Vehicle Collision

**PROCESS SERVED ON:** C T Corporation System, Columbus, OH

**DATE/METHOD OF SERVICE:** By Traceable Mail on 09/22/2026

**JURISDICTION SERVED:** Ohio

**ACTION ITEMS:** CT has retained the current log, Retain Date: 09/22/2026, Expected Purge Date: 09/27/2026

Image SOP

Email Notification, Shawn Wilson shawn.wilson@toyota.com

Email Notification, Lee Anne Johnston lee.anne.johnston@toyota.com

Email Notification, John Gersch john.gersch@toyota.com

**REGISTERED AGENT CONTACT:** C T Corporation System
4400 Easton Commons Way
Suite 125
Columbus, OH 43219
8775647529
MajorAccountTeam2@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

United States Postal Service ®

CERTIFIED MAIL

FIRST-CLASS

US POSTAGE PITNEY BOWES

ZIP 44102 $ 011.60⁰
02 7W
0008041111 SEP. 16. 2026

XW0376-000

NAILAH K. BYRD
1200 ONTARIO
CLEVELAND, OH 44113

Case# CV26146579

9214 8903 0179 8219 1505 06

TOYOTA MOTOR SALES, U.S.A., INC.
CO CT CORPORATION SYSTEM
4400 EASTON COMMONS WAY, SUITE 125
COLUMBUS OH 43219

# THE COURT OF COMMON PLEAS, CIVIL DIVISION
# CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

RANNA ZABOURA, ET AL.
**Plaintiff**

V.

TOYOTA MOTOR CORPORATION, ET AL
**Defendant**

**CASE NO.** CV26146579

**JUDGE** ASHLEY KILBANE

## SUMMONS

SUMC CM

**Notice ID:** 61997091

From: RANNA ZABOURA P1
19624 WINDING TRAIL
STRONGSVILLE OH 44149

Atty.: JAMES A LOWE
115 MAIN STREET
CHARDON, OH 44024

To: TOYOTA MOTOR SALES, U.S.A., INC. D3
CO CT CORPORATION SYSTEM
4400 EASTON COMMONS WAY, SUITE 125
COLUMBUS OH 43219

**NOTICE TO THE DEFENDANT:**

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff. You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.gov/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.

COMMON PLEAS COURT · CUYAHOGA COUNTY · OHIO

**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

**Date Sent:** 09/15/2026

**By**______________________________
**Deputy**

CMSN130

# Cuyahoga County Clerk of Courts
Nailah K. Byrd

**Multilingual Notice:**

You have been named as a defendant in this Court. You must file an answer within 28 days; if you fail to answer, the Court may enter judgment against you for the relief stated in the Complaint. Seek assistance from both an interpreter and an attorney. Your inability to understand, write, or speak English will not be a defense to possible judgment against you.

1. **Spanish (US)**
   ***Aviso multilingüe:

   Este Tribunal lo ha declarado como acusado. Debe presentar una respuesta en un plazo de 28 días. Si no contesta en dicho plazo, el Tribunal podrá dictar sentencia en su contra por el amparo que se detalla en la demanda. Solicite la ayuda de un intérprete y de uñ abogado. Su incapacidad para comprender, escribir o hablar inglés no se considerará como defensa ante una posible sentencia en su contra.

2. **Somali**
   ***Ogeysiis luqadda badan ah:

   Waxaa laguu magacaabay sida eedeysane gudaha Maxkamadan. Waa in aad ku soo gudbisaa jawaab 28 maalmood gudahood; haddii aad ku guuldareysto jawaabta, Maxkamada laga yaabo in ay gasho xukun adiga kaa soo horjeedo ee ka nasashada lagu sheegay Cabashada. Raadi caawinta ka timid labadaba turjubaanka iyo qareenka. Karti la'aantaada aad ku fahmo, ku qoro, ama ku hadasho Af Ingiriisiga ma noqon doonto difaacida xukunkaaga suuralka ah ee adiga kugu lidka ah.

3. **Russian**
   ***Уведомление на разных языках:

   Вы были названы в качестве ответчика в данном суде. Вы должны предоставить ответ в течение 28 дней; если Ваш ответ не будет получен, суд может вынести решение против Вас и удовлетворить содержащиеся в жалобе требования. Воспользуйтесь услугами переводчика и адвоката. Тот факт, что Вы не понимаете английскую речь и не можете читать и писать по-английски, не является препятствием для возможного вынесения судебного решения против Вас.

4. **Arabic**
   ***ملاحظة متعددة اللغات:

   لقد تم اعتبارك مدعى عليهِ في هذه المحكمة. يجب أن تقدم ردا خلال 28 يوما؛ وإذا لم تقم بالرد، فقد تصدر المحكمة حكما ضدك بالتعويض المنصوص عليهِ في هذه الشكوى القضائية. اطلب المساعدة من مترجم فوري ومحام. فلن تعد عدم قدرتك على فهم اللغة الإنجليزية أو كتابتها أو تحدثها دفاعا لك أمام الحكم المحتمل ضدك.

5. **Chinese (Simplified)**
   ***多語版本通知：

   您在本法庭已被列为被告。您必须于 28
   日内递交答辩状；如果没有递交答辩状，法庭会针对诉状中声明的补救措施对您作出不利判决。请向口译人员和律 师寻求帮助。您无法理解、书写或说英语的情况不能作为对您可能作出不利判决的辩护理由。

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

# Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**September 14, 2026 15:16**

By: KYLE B. MELLING 0091208

Confirmation Nbr. 3977689

RANNA ZABOURA, ET AL.

vs.

TOYOTA MOTOR CORPORATION, ET AL

CV 26 146579

**Judge:** ASHLEY KILBANE

**Pages Filed:** 26

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

**RANNA ZABOURA**
19624 Winding Trail
Strongsville, Ohio 44149,

and

**GEORGE ZABOURA**
19624 Winding Trail
Strongsville, Ohio 44149,

Plaintiffs,

v.

**TOYOTA MOTOR CORPORATION**
1 Toyota-Cho
Toyota City, Aichi Prefecture
Japan 471-8571,

and

**TOYOTA MOTOR NORTH AMERICA, INC.**
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219,

and

**TOYOTA MOTOR SALES, U.S.A., INC.**
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219,

and

**TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.**
6565 Headquarters Drive
Plano, Texas 75024,

and

CASE NO.:

JUDGE

**COMPLAINT**

***JURY TRIAL DEMANDED***

**TOYOTA MOTOR MANUFACTURING CANADA INC.**
1055 Fountain Street North
Cambridge, Ontario N3H 4R7, Canada,

and

**AAG-CLEVELAND, L.L.C. d/b/a METRO LEXUS**
13600 Brookpark Rd.
Cleveland, Ohio 44135
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219,

and

**METRO LEXUS**
13600 Brookpark Rd.
Cleveland, Ohio 44135
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219,

and

**MEDICAL MUTUAL OF OHIO**
100 American Rd.
Cleveland, Ohio 44144
c/o CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219

Defendants.

NOW come Plaintiffs, Ranna Zaboura and George Zaboura, by and through their undersigned counsel, and file the following Complaint against Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing Canada Inc., AAG-Cleveland,

L.L.C. d/b/a Metro Lexus, Metro Lexus, and Medical Mutual of Ohio, and in support thereof aver as follows:

## INTRODUCTION

1. This is a products liability action under the Ohio Products Liability Act, Ohio Revised Code §2307.71, et seq.

2. On December 17, 2024, Plaintiff Ranna Zaboura's 2020 Lexus RX350 stopped itself and warned her of a hazard behind it.

3. As Plaintiff Ranna Zaboura stepped out to see what was behind her, the 2020 Lexus RX350 rolled backward and ran over her.

4. The 2020 Lexus RX350's rear automatic braking system is designed to release the brakes after approximately two seconds, or as soon as the driver touches the brake pedal, whether or not the driver is in a position to take back control of the vehicle.

5. At the time Plaintiff Ranna Zaboura stepped out, the 2020 Lexus RX350 knew that her seatbelt was unbuckled, her driver's door was open, and the transmission was in reverse.

6. Toyota designed the 2020 Lexus RX350 to use that information only to display a small "Shift to P" message, rather than to apply the electronic parking brake the vehicle already had.

7. Toyota has built an automatic parking brake that engages on driver exit into Lexus vehicles since 2007, and competing 2020 model year vehicles secured themselves automatically when the driver exited.

8. In June 2019, Toyota publicly announced that "starting from Model Year 2020" it would phase in an "Automatic Park" feature to "help reduce the risk of roll-away." The 2020 Lexus RX350, a Model Year 2020 Lexus with an electronic parking brake, did not have that feature.

9. Plaintiffs bring claims against Toyota for defective design, defective manufacture, inadequate warning, and nonconformance with representation under Ohio Revised Code §§2307.74 through 2307.77; against the Dealership that certified, sold, and serviced the 2020 Lexus RX350 as a supplier under Ohio Revised Code §2307.78; for punitive damages under Ohio Revised Code §2307.80; and for Plaintiff George Zaboura's loss of consortium.

10. Medical Mutual of Ohio is named solely so that its claimed subrogation interest in any recovery may be determined in this action.

## PARTIES

11. At all times relevant hereto, Plaintiff Ranna Zaboura is and was an adult individual residing at 19624 Winding Trail, Strongsville, Ohio 44149.

12. At all times relevant hereto, Plaintiff George Zaboura is and was an adult individual residing at 19624 Winding Trail, Strongsville, Ohio 44149, and is and was the husband of Plaintiff Ranna Zaboura.

13. At all times relevant hereto, Plaintiff Ranna Zaboura was the owner and operator of a 2020 Lexus RX350 (hereinafter referred to as the "2020 Lexus RX350" or the "Subject Vehicle") (VIN: 2T2JZMDA0LC223360).

14. Defendant Toyota Motor Corporation (hereinafter "TMC") is a corporation organized under the laws of Japan with its principal place of business at 1 Toyota-Cho, Toyota City, Aichi Prefecture, Japan.

15. Defendant TMC is a manufacturer as defined in Ohio Revised Code §2307.71, which designed, engineered, tested, produced, created, made, constructed, manufactured, and/or assembled the Subject Vehicle and its braking, parking-brake, and driver-assistance systems.

16. Defendant Toyota Motor North America, Inc. (hereinafter "TMNA") is a corporation organized under the laws of the State of California with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. TMNA is registered to do business in the State of Ohio (Ohio Secretary of State No. 3910589) and has designated CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219, as its statutory agent.

17. Defendant TMNA directs Toyota's North American sales, engineering, and manufacturing operations and issued the June 12, 2019 "Automatic Park" announcement described within. Defendant TMNA is a manufacturer as defined in Ohio Revised Code §2307.71.

18. Defendant Toyota Motor Sales, U.S.A., Inc. (hereinafter "TMS") is a corporation organized under the laws of the State of California with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. TMS is registered to do business in the State of Ohio (Ohio Secretary of State No. 754945) and has designated CT Corporation System as its statutory agent.

19. Defendant TMS, through its Lexus division, imported and distributed the Subject Vehicle, published its owner's manual and marketing materials, operates the Lexus certified pre-owned ("L/Certified") program, and distributes Lexus vehicles to franchised dealers throughout the State of Ohio and specifically Cuyahoga County. Defendant TMS is a manufacturer and a supplier as defined in Ohio Revised Code §2307.71.

20. Defendant Toyota Motor Engineering & Manufacturing North America, Inc. (hereinafter "TEMA") is, upon information and belief, a corporation organized under the laws of the Commonwealth of Kentucky with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. TEMA engineers, designs, tests, and validates Toyota- and Lexus-brand

vehicles and their component systems for the North American market. Defendant TEMA is a manufacturer as defined in Ohio Revised Code §2307.71.

21. Defendant Toyota Motor Manufacturing Canada Inc. (hereinafter "TMMC") is a corporation organized under the laws of Canada with its principal place of business at 1055 Fountain Street North, Cambridge, Ontario N3H 4R7, Canada. TMMC assembled the Subject Vehicle at its Cambridge, Ontario plant in November 2019. Defendant TMMC is a manufacturer as defined in Ohio Revised Code §2307.71.

22. Defendants TMC, TMNA, TMS, TEMA, and TMMC are hereinafter collectively referred to as "Toyota."

23. At all times material hereto, Toyota designed, tested, manufactured, marketed, advertised, sold, distributed, and/or supplied motor vehicles, including the Subject Vehicle, throughout the United States, including in the State of Ohio and, specifically, Cuyahoga County.

24. At all times material hereto, Toyota conducted and continues to conduct substantial and continuous business in the State of Ohio and, specifically, Cuyahoga County, through a network of franchised Toyota and Lexus dealers, including the Dealership described below. Toyota derives substantial revenue from business within the State of Ohio and, specifically, Cuyahoga County.

25. The division of design, engineering, manufacturing, distribution, and marketing responsibilities among the Toyota entities is known to Toyota and not to Plaintiffs. Plaintiffs therefore allege in the alternative that each Toyota entity performed each of those functions and acted as the agent, joint venturer, and/or alter ego of the others with respect to the Subject Vehicle.

26. Defendant AAG-Cleveland, L.L.C. d/b/a Metro Lexus (hereinafter the "Dealership") is a limited liability company organized under the laws of the State of Delaware and

registered to do business in the State of Ohio (Ohio Secretary of State No. 1473347), with its principal place of business located at 13600 Brookpark Road, Brook Park, Cuyahoga County, Ohio, and has designated CT Corporation System as its statutory agent. Upon information and belief, one or more members of the Dealership are citizens of the State of Ohio.

27. At all times relevant hereto, the Dealership owned and operated the franchised Lexus dealership known as Metro Lexus, located at 13600 Brookpark Road, Brook Park, Cuyahoga County, Ohio, under Ohio registered trade name No. 1226201.

28. Defendant Metro Lexus is the registered Ohio trade name under which the Dealership sold and serviced the Subject Vehicle and is named herein pursuant to Ohio Revised Code §1329.10(C). Metro Lexus and AAG-Cleveland, L.L.C. are one and the same party, and references herein to the "Dealership" include both.

29. The Dealership sold, inspected, reconditioned, certified, and serviced the Subject Vehicle and is a supplier as defined in Ohio Revised Code §2307.71.

30. Defendant Medical Mutual of Ohio (hereinafter "Medical Mutual") is a mutual insurance company organized under the laws of the State of Ohio (Ohio Secretary of State No. 189155) with its principal place of business in Cleveland, Cuyahoga County, Ohio, and has designated CT Corporation System as its statutory agent. Medical Mutual is a citizen of the State of Ohio.

31. Medical Mutual insured Plaintiff Ranna Zaboura's health-care expenses under a policy of insurance issued in the State of Ohio, has paid medical expenses arising from the incident described within, and claims a right of subrogation and reimbursement from any recovery in this action.

## JURISDICTION AND VENUE

32. At all times relevant hereto, Toyota and the Dealership were and are performing activities and services, and were soliciting other activities and services, within Cuyahoga County, Ohio, and products manufactured, distributed, sold, or serviced by or on behalf of said parties, including the Subject Vehicle, were and are sold, used, and consumed in Cuyahoga County, Ohio, in the ordinary course of their respective trade or business. Further, the tortious act occurred in the State of Ohio.

33. The Subject Vehicle was delivered new to a Lexus dealer in Cuyahoga County, Ohio, was sold new in Ohio, was sold again in Ohio to Plaintiff Ranna Zaboura, and was serviced, registered, and driven in Ohio. Plaintiffs' claims arise out of and relate to Toyota's and the Dealership's activities in the State of Ohio.

34. This Court has personal jurisdiction over all Defendants pursuant to Ohio Revised Code §2307.382 and Civ.R. 4.3(A). Defendants TMC and TMMC may be served pursuant to the Hague Service Convention and Civ.R. 4.3 and 4.5.

35. This Court has subject-matter jurisdiction pursuant to Ohio Revised Code §2305.01, as the amount in controversy exceeds $25,000, exclusive of interest and costs, and pursuant to Ohio Revised Code §§2721.02 and 2721.03 as to the declaratory relief sought in Count V.

36. Venue is proper in Cuyahoga County, Ohio, pursuant to Civ.R. 3(C)(2), (3), and (6), as the Dealership and Medical Mutual have their principal places of business in Cuyahoga County, the Subject Vehicle was sold to Plaintiff Ranna Zaboura in Cuyahoga County, and the incident described within occurred in Cuyahoga County.

## STATEMENT OF MATERIAL FACTS

37. The Subject Vehicle was assembled by Defendant TMMC in Cambridge, Ontario, in November 2019, was distributed by Defendant TMS, and was delivered new to Metro Lexus in Brook Park, Ohio.

38. The Subject Vehicle was first sold or leased through Metro Lexus on or about November 26, 2019.

39. On or about September 2, 2022, Plaintiff Ranna Zaboura purchased the Subject Vehicle from the Dealership as a Lexus-certified ("L/Certified") pre-owned vehicle.

40. Prior to the sale, the Dealership inspected, reconditioned, and certified the Subject Vehicle under the L/Certified program and represented it to Plaintiff Ranna Zaboura as a certified, like-new Lexus.

41. The Dealership performed all service on the Subject Vehicle from the date of sale through September 2024.

42. Plaintiff Ranna Zaboura has owned Lexus vehicles for years and chose them because Toyota advertised, and she believed, that Lexus vehicles were among the safest on the road.

43. The Subject Vehicle's window label represented that the Subject Vehicle was equipped with "Lexus Safety System+ 2.0," including a "Pre-Collision System with Pedestrian Detection," and with "Blind Spot Monitor with Intuitive Parking Assist, Panoramic View Monitor, and Rear Cross Traffic Braking."

44. Toyota marketed and advertised Lexus Safety System+ 2.0 as "Advanced Safety for Peace of Mind" in its brochures, on its website, and in its advertising. Upon information and

belief, Toyota approved these representations and intended consumers, including Plaintiff Ranna Zaboura, to rely upon them.

45. Plaintiff Ranna Zaboura saw and relied upon the window label, the L/Certified materials, Toyota's marketing, and the Dealership's description of the Subject Vehicle's safety features in purchasing and operating the Subject Vehicle.

46. The Subject Vehicle was equipped with a conventional lever-type gear selector with Park, Reverse, Neutral, and Drive positions, and with a keyless push-button ignition.

47. The Subject Vehicle was equipped with an electronic parking brake (hereinafter "EPB") that is applied and released by electric motors under the control of the Subject Vehicle's computer. The Subject Vehicle's software can, and in some circumstances does, apply the EPB automatically without any action by the driver.

48. The Subject Vehicle was equipped with a rear automatic-braking system that Toyota calls the Parking Support Brake (hereinafter "PKSB"), consisting of Intuitive Parking Assist, Intelligent Clearance Sonar, and Rear Cross Traffic Braking.

49. When the Subject Vehicle is backing slowly and its sensors detect an object behind it, the PKSB sounds an alarm, displays a warning, reduces engine power, and automatically applies the brakes to prevent or mitigate a collision.

50. After the PKSB detects a hazard and stops the Subject Vehicle, it releases the brake after approximately 2 seconds, or as soon as the driver depresses the brake pedal.

51. The PKSB does not determine whether the driver is still seated, belted, or behind a closed door before it releases the brakes and returns control of the Subject Vehicle to the driver. Further, the PKSB does not warn the driver that it is returning control to the driver, nor engage in any check to confirm that the driver is prepared for control to be returned.

52. The Subject Vehicle continuously monitors whether the driver's seatbelt is buckled, whether the driver's door is open, the position of the gear selector, whether the Subject Vehicle is moving, whether the brake pedal is depressed, and whether the EPB is applied.

53. When the engine is on, the transmission is not in Park, the Subject Vehicle is stopped, and the driver's door is opened, the Subject Vehicle's software displays the message "Shift to P before exiting vehicle" in text on the instrument cluster and sounds a buzzer. Toyota's service information identifies vehicle rollaway as the hazard this message addresses.

54. Toyota's owner's manual for the Subject Vehicle states that "[a] buzzer sounds the first time a message is shown on the multi-information display," and, on the same page that describes the "Shift to P Before Exiting Vehicle" message, states: "In some cases, the buzzer may not be heard due to being in a noisy location or audio sound."

55. Under those same conditions, the Subject Vehicle does not apply the EPB, does not hold the service brakes, and does not shift the transmission to Park.

56. The Subject Vehicle was equipped with a driver-selectable feature called "Brake Hold," which, when the driver turns it on, holds the brakes after a stop so the driver can remove a foot from the brake pedal. When Brake Hold is on and holding the Subject Vehicle, the software automatically applies the EPB if the driver's door is opened or the driver's seatbelt is unbuckled.

57. Brake Hold is off by default and turns off each time the Subject Vehicle is shut down, so that the driver must press the Brake Hold button on every trip. Toyota describes Brake Hold to owners as a convenience for waiting in traffic, not as a safety feature.

58. Brake Hold does not operate when the transmission is in Reverse.

59. The Subject Vehicle therefore provided no automatic protection against rollaway to a driver exiting the Subject Vehicle while it was in Reverse, whether or not the driver had turned Brake Hold on.

60. On or about December 17, 2024, at approximately 9:00 a.m., Plaintiff Ranna Zaboura was backing the Subject Vehicle slowly out of a parking space in the Giant Eagle parking lot located at 15919 Pearl Road, Strongsville, Cuyahoga County, Ohio. The weather was clear and the pavement was dry and essentially level.

61. As Plaintiff Ranna Zaboura backed, an object, which Plaintiffs now believe was an unattended shopping cart, rolled behind the Subject Vehicle.

62. The PKSB detected the object, sounded its alarm, displayed a red collision warning on the instrument panel and the infotainment screen, and abruptly stopped the Subject Vehicle.

63. Plaintiff Ranna Zaboura was startled and reasonably believed that the Subject Vehicle had stopped itself for a hazard behind it and would remain stopped. She did not know what the Subject Vehicle had detected or whether she had hit a person, a child, or a cart, and she quickly placed her foot on the brake, unbuckled her seatbelt, opened the driver's door, and began to step out to find out.

64. Plaintiff Ranna Zaboura did not move the gear selector to Park. The Subject Vehicle remained running and in Reverse.

65. The PKSB's braking released, either because approximately two seconds had elapsed or because Plaintiff Ranna Zaboura's application of the brake pedal cancelled it, as Toyota designed it to do.

66. The EPB did not apply. The Subject Vehicle did not shift to Park.

67. As Plaintiff Ranna Zaboura's foot left the brake pedal and she stepped out, the Subject Vehicle immediately moved backward under engine power.

68. The open driver's door knocked Plaintiff Ranna Zaboura to the ground, and the Subject Vehicle's left front wheel rolled over her entire body from her feet to right shoulder.

69. The Subject Vehicle continued backward across the parking lot until it struck a parked, unoccupied vehicle and pushed that vehicle into a cart corral.

70. When Strongsville police officers arrived minutes later. the Subject Vehicle's reverse lights were still illuminated.

71. Plaintiff Ranna Zaboura lay on the pavement, conscious and in severe pain, until help arrived. Plaintiff George Zaboura arrived at the scene before the ambulance and found his wife crushed on the pavement.

72. As a direct and proximate result of the defective aspects of the Subject Vehicle, Plaintiff Ranna Zaboura suffered catastrophic injuries, including but not limited to an unstable "open-book" pelvic-ring fracture with bilateral acetabular and pubic rami fractures, rupture of the pubic symphysis, and bilateral sacroiliac dislocation; fractures of the right second through seventh ribs; a left ankle fracture; and a perineal hematoma with active arterial hemorrhage and hemorrhagic shock.

73. Plaintiff Ranna Zaboura required emergency arterial embolization, blood transfusions, surgical fixation of her pelvis and ribs with placement of a chest tube, ten days of hospitalization including intensive care, two weeks of inpatient rehabilitation, months in a wheelchair and hospital bed at home, and continuing therapy.

74. Plaintiff Ranna Zaboura has suffered permanent impairment, including chronic pelvic-floor dysfunction with urinary incontinence and bowel dysfunction, neuropathic pain, impaired mobility, scarring and disfigurement, and psychological trauma.

75. It was foreseeable to Toyota that a driver who had been stopped and warned by the PKSB would step out of the Subject Vehicle to look at what was behind it.

76. It was foreseeable to Toyota, and was documented in published human-factors research known to Toyota, that drivers who step out of a stopped vehicle frequently keep a foot on the brake pedal until they are out of the door and begin moving away before realizing the transmission is not in Park.

77. In fact, because Toyota knew of the rollaway hazard presented by drivers exiting vehicles that are not in Park, on June 12, 2019, prior to the Subject Vehicle's manufacture, Defendant TMNA issued a press release titled "Toyota Plans to Deploy Automatic Engine Shut Off and Automatic Park Features to Vehicle Line Up," which stated:

> "[S]tarting from Model Year 2020, Toyota will begin to phase in Automatic Park, which is designed to help reduce the risk of roll-away. The Automatic Park feature will be available in vehicles with electronic means of shifting and/or applying the parking brake, and is designed to automatically shift the vehicle into the 'park' position and/or apply the electronic parking brake, in the event the driver exits the vehicle without placing the vehicle in 'park.'"

78. The Subject Vehicle was built in November 2019, five months after the press release. The Subject Vehicle is a Model Year 2020 vehicle equipped with an electronic parking brake.

79. The Subject Vehicle was not equipped with the Automatic Park feature described in Toyota's June 12, 2019 press release.

80. The Subject Vehicle had all of the equipment required to apply the electronic parking brake, in the event that the driver exits the vehicle without placing the vehicle in park. This includes a seat belt sensor, a door sensor, a gearshift sensor and an electronic parking brake.

81. Toyota has applied the EPB automatically upon door-open or seatbelt-off within Brake Hold since the 2007 Lexus LS460, and has automatically shifted its electronic-shifter hybrid vehicles to Park upon driver exit since at least model year 2011.

82. For model year 2021, Toyota released the Toyota Sienna Hybrid, which, like the Subject Vehicle, combines a lever-type gear selector with an electronic parking brake, with a "Parking Brake Automatic Lock" function that applies the EPB automatically when the driver exits with the transmission out of Park.

83. Upon information and belief, the Lexus RX received an equivalent default automatic parking-brake safeguard for model year 2023.

84. By model year 2020, vehicles that automatically secured themselves when the driver exited out of Park, without any driver opt-in, were in production across the industry, including the Jeep Grand Cherokee and Cherokee, Ram 1500, Dodge Durango, Chrysler Pacifica, Ford Explorer, Lincoln Aviator, and Tesla vehicles, and models from Mercedes-Benz, Volvo, Hyundai, Kia, and Genesis.

85. Upon information and belief, in 2024 Kia added an automatic EPB-on-exit safeguard to more than 400,000 already-sold model-year 2020 through 2024 Telluride vehicles, which, like the Subject Vehicle, have a lever-type shifter and an EPB, by software update in NHTSA Recall No. 24V-214.

86. Toyota could have provided the same safeguard to the Subject Vehicle at any time before December 17, 2024, including through the Dealership at a service visit or over the air through the Subject Vehicle's connected-services system.

87. Toyota knew or should have known that the Subject Vehicle was defective if it did not secure itself when the driver exited out of Park, as other similar incidents had been reported to Toyota. Before the Subject Vehicle was sold, NHTSA's complaint database contained hundreds of owner reports of Toyota and Lexus rollaways, including reports of injuries and deaths, and NHTSA data showed vehicle rollaway deaths rising sharply.

88. In 2016, FCA US LLC recalled more than one million vehicles (NHTSA Recall No. 16V-240) after concluding that chimes and visual alerts had "not stopped some" drivers from exiting with the transmission out of Park and that the absence of an automatic countermeasure was a safety defect. The warning strategy FCA found defective in 2016 is materially the same as the warning strategy Toyota used on the Subject Vehicle.

89. Toyota has recalled other Toyota and Lexus vehicles, including in 2017, 2022, and 2025 (NHTSA Recall Nos. 17V-717, 22V-661, and 25V-656), because their electronic parking brakes could fail to engage, and in those recalls warned owners that a vehicle left out of Park without the parking brake set "could rollaway."

90. Upon information and belief, Toyota designed its vehicles' computers to record an event labeled "Driver Exited Vehicle When Shift Position Wasn't P."

91. Upon information and belief, Toyota engineers have testified under oath in other rollaway litigation that automatic application of the electronic parking brake upon driver exit was technically feasible as early as 2007 and that driver safety is more important than the annoyance of an unwanted parking-brake application.

92. Plaintiff Ranna Zaboura's injuries constitute permanent and substantial physical deformity and permanent loss of use of a bodily organ system within the meaning of Ohio Revised Code §2315.18(B)(3).

93. Pursuant to Ohio Revised Code §2307.80, Toyota's manufacture and sale of the Subject Vehicle with its automatic parking-brake safeguard disabled by default and non-functional in Reverse, after publicly announcing that safeguard for Model Year 2020 vehicles and while marketing the Subject Vehicle's automatic braking as "Advanced Safety for Peace of Mind," manifested a flagrant disregard of the safety of persons, including Plaintiff Ranna Zaboura, who might be harmed by the Subject Vehicle.

94. At all times relevant hereto, Plaintiff Ranna Zaboura's health-care expenses were insured by Medical Mutual under a group policy of insurance issued in the State of Ohio. Upon information and belief, the policy is fully insured by Medical Mutual and is not a self-funded employee-benefit plan.

95. Plaintiffs' claim against Medical Mutual arises solely under Ohio law, including Ohio Revised Code Chapter 2721, Ohio Revised Code §2323.44, and the terms of the policy.

96. Medical Mutual has paid medical expenses arising from the incident in an amount believed to exceed $200,000 and has asserted a right of subrogation and reimbursement from any recovery Plaintiffs obtain in this action.

97. Plaintiffs contend that any interest of Medical Mutual is subject to the limitations of Ohio Revised Code §2323.44, including proportional diminution where Plaintiffs' recovery is less than the full value of their damages; is subject to Medical Mutual's proportionate share of attorney fees and expenses; is limited to payments for treatment of injuries caused by the incident;

is subordinate to Plaintiffs' right to be made whole; and is governed by the terms of the Ohio policy.

98. The Subject Vehicle has been preserved in Plaintiffs' counsel's custody. Plaintiffs demand that Defendants preserve all data recorded or transmitted by the Subject Vehicle and all design, testing, failure-mode, field-report, complaint, warranty, recall, and technical-service records relating to the Parking Support Brake, electronic parking brake, Brake Hold, "Shift to P" warning, and Automatic Park systems.

99. No Federal Motor Vehicle Safety Standard requires, addresses, or prohibits an automatic parking-brake or shift-to-Park safeguard triggered by driver exit. FMVSS 114 imposes only minimum, key-based rollaway-prevention requirements, and 49 U.S.C. §30103(e) preserves liability notwithstanding compliance with a federal standard.

**COUNT I**
**(All Plaintiffs v. Defendants TMC, TMNA, TMS, TEMA, and TMMC)**
**Ohio Revised Code §2307, et seq.**

100. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

101. At all times relevant hereto, Toyota was engaged in the business of designing, developing, manufacturing, testing, engineering, approving, marketing, promoting, assembling, equipping, inspecting, labeling, advertising, distributing, selling, and supplying motor vehicles and the component parts of motor vehicles, including the Subject Vehicle, for use by the consuming public in the State of Ohio and throughout the world.

102. At all times relevant hereto, the dangerous propensities of the Subject Vehicle were known to Toyota, or were reasonably and scientifically knowable to it, through appropriate research and testing by known methods, at the time it designed, developed, manufactured, tested,

engineered, approved, marketed, promoted, advertised, distributed, and sold the Subject Vehicle to the consuming public, including consumers in the State of Ohio, but were not known to end users or consumers, including Plaintiff Ranna Zaboura.

103. At the time the Subject Vehicle left the control of Toyota, it was defective in design and manufacture and unreasonably dangerous to a person who might reasonably be expected to use it in a foreseeable manner.

104. The risks of the design of the Subject Vehicle outweighed the benefits, and accordingly the Subject Vehicle was defective in its design pursuant to Ohio Revised Code §2307.75. At all times relevant, a practical and technically feasible alternative design was available that would have prevented the harm for which Plaintiffs seek to recover compensatory damages without substantially impairing the usefulness or intended purpose of the Subject Vehicle.

105. The Subject Vehicle was defective in manufacture pursuant to Ohio Revised Code §2307.74 because, upon information and belief, its PKSB, EPB, or related components or software deviated in a material way from Toyota's design specifications or performance standards, or from otherwise identical units.

106. The Subject Vehicle was defective by reason of Toyota's failure to provide adequate warning or instruction pursuant to Ohio Revised Code §2307.76, because Toyota knew or, in the exercise of reasonable care, should have known of the risks described herein and failed to provide the warning or instruction, at the time of marketing and thereafter, that a manufacturer exercising reasonable care would have provided, given the nature and magnitude of those risks, the likely lack of awareness of them by consumers and users of the Subject Vehicle, and the likelihood that they would cause harm. Those risks were not open and obvious and were not matters of common knowledge.

107. The Subject Vehicle was defective because it did not conform, when it left the control of Toyota, to representations made by Toyota with respect to its character, quality, and/or safety, pursuant to Ohio Revised Code §2307.77, upon which Plaintiff Ranna Zaboura justifiably relied.

108. The Subject Vehicle was in a defective condition at the time it left the possession and control of Toyota and was not substantially changed or altered prior to the time of the incident.

109. Specifically, Toyota, by its divisions, subdivisions, agents, servants, workmen, and/or employees, is strictly liable under Ohio Products Liability law for one or more of the following reasons:

a. Designing, manufacturing, distributing, and/or selling the Subject Vehicle with a Parking Support Brake that stops the vehicle, alarms the driver, and then releases the brakes within approximately two seconds or upon brake application without any means of securing the vehicle if the driver is exiting;

b. Failing to design, manufacture, distribute, and/or sell the Subject Vehicle with a default automatic application of the electronic parking brake, or an automatic shift to Park, upon driver-exit indicators in every gear, including Reverse;

c. Confining the Subject Vehicle's only automatic rollaway protection to the optional Brake Hold feature, which is off by default, must be re-enabled on every trip, and does not operate in Reverse;

d. Failing to equip the Subject Vehicle, a Model Year 2020 vehicle with an electronic parking brake, with the Automatic Park feature Toyota publicly announced for Model Year 2020 vehicles on June 12, 2019;

e. Failing to install a technologically and economically feasible rollaway safeguard on the Subject Vehicle that Toyota had used in its own vehicles since 2007 and that competing 2020 vehicles included as standard;

f. Failing to provide sufficient warnings as to the reasonably foreseeable dangers in the use or operation of the Subject Vehicle, including that the Parking Support Brake releases within seconds, that the Subject Vehicle will not secure itself upon driver exit, and that Brake Hold provides no protection in Reverse;

g. Designing the "Shift to P" warning so that it appears in small text outside the view of an exiting driver, with a buzzer that Toyota concedes in its own manual "may not be heard";

h. Marketing the Subject Vehicle's automatic-braking and parking-assist systems as "Advanced Safety for Peace of Mind" without disclosing that the automatic braking releases within seconds and will not hold the vehicle;

i. Failing, after sale, to provide the software remedy for the rollaway hazard that Toyota knew was available, through the Dealership or over the air; and

j. Failing to adequately test the Parking Support Brake, electronic parking brake, and driver-exit warning systems of the Subject Vehicle for the foreseeable driver-exit scenario prior to sale to the consuming public.

110. Toyota knew or should have known that consumers, including Plaintiff Ranna Zaboura, would suffer foreseeable injury as a result of its failures described above.

111. Prior to designing, selecting, inspecting, testing, manufacturing, assembling, equipping, marketing, distributing, and/or selling the Subject Vehicle, Toyota knew that there was a safer, technologically feasible alternative design that would have eliminated or minimized the risk of rollaway upon driver exit such as this one.

112. A defective aspect of the Subject Vehicle was a direct and proximate cause of the catastrophic injuries suffered by Plaintiff Ranna Zaboura, as alleged herein.

**<u>COUNT II</u>**
**(All Plaintiffs v. Defendants AAG-Cleveland, L.L.C.**
**d/b/a Metro Lexus and Metro Lexus)**
**Ohio Revised Code §2307.78**

113. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

114. At all times relevant hereto, the Dealership was a supplier of the Subject Vehicle as defined in Ohio Revised Code §2307.71.

115. The Dealership owed a duty of due care to Plaintiff Ranna Zaboura and to any foreseeable user or operator of the Subject Vehicle to instruct and warn regarding the dangerous condition of the Subject Vehicle described herein.

116. The Dealership breached that duty and was negligent, pursuant to Ohio Revised Code §2307.78(A)(1), in one or more of the following respects:

a. Describing the Subject Vehicle's parking-assist and rear automatic-braking features at sale and delivery as systems that would stop the Subject Vehicle to avoid a collision without disclosing that the braking releases within seconds and that the Subject Vehicle would not secure itself upon driver exit;

b. Failing, as the Lexus-trained dealer that inspected, certified, delivered, and exclusively serviced the Subject Vehicle, to instruct Plaintiff Ranna Zaboura that the Subject Vehicle's only automatic rollaway protection depended upon Brake Hold, had to be switched on every trip, and did not operate in Reverse; and

c. Failing, at the Subject Vehicle's service visits, to advise Plaintiff Ranna Zaboura of, or to provide, any available update or countermeasure addressing rollaway upon driver exit.

117. The Subject Vehicle did not conform, when it left the control of the Dealership, to the Dealership's representations that it was a certified, inspected, like-new Lexus whose parking-assist and rear automatic-braking systems would stop the Subject Vehicle to avoid collisions, upon which Plaintiff Ranna Zaboura justifiably relied, and the Dealership is liable pursuant to Ohio Revised Code §2307.78(A)(2).

118. In the alternative, the Dealership is liable as if it were the manufacturer of the Subject Vehicle pursuant to Ohio Revised Code §2307.78(B)(1), to the extent Defendants TMC or TMMC, both foreign corporations, are not subject to judicial process in the State of Ohio or a judgment against them cannot be enforced, and pursuant to Ohio Revised Code §2307.78(B)(6), because the Dealership altered, modified, or failed to maintain the Subject Vehicle in the course

of reconditioning, certifying, and servicing it, and on any other ground enumerated in Ohio Revised Code §2307.78(B) that discovery reveals.

119. The Dealership's negligence and nonconformance were a direct and proximate cause of the catastrophic injuries suffered by Plaintiff Ranna Zaboura, as alleged herein.

**COUNT III**
**(Plaintiff George Zaboura v. All Defendants Other Than Medical Mutual of Ohio)**
**Loss of Consortium**

120. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

121. At all times relevant hereto, Plaintiff George Zaboura was, and continues to be, the lawful husband of Plaintiff Ranna Zaboura.

122. As a direct and proximate result of Defendants' conduct and the injuries to his wife, Plaintiff George Zaboura has been and will be deprived of the services, society, companionship, comfort, affection, consortium, and support of his wife, and has incurred and will incur related losses.

**COUNT IV**
**(All Plaintiffs v. All Defendants Other Than Medical Mutual of Ohio)**
**Punitive Damages, Ohio Revised Code §2307.80**

123. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

124. The harm for which Plaintiffs are entitled to recover compensatory damages in accordance with §2307, et seq. of the Ohio Revised Code was the result of misconduct of Defendants TMC, TMNA, TMS, TEMA, TMMC, and the Dealership that manifested a flagrant disregard of the safety of persons who might be harmed by the Subject Vehicle, including designing, manufacturing, certifying, and selling the Subject Vehicle with its automatic parking-

brake safeguard disabled by default and non-functional in Reverse after Toyota had publicly announced that safeguard for Model Year 2020 vehicles.

125. Pursuant to Ohio Revised Code §2307.80, Plaintiffs are entitled to recover punitive or exemplary damages from Defendants TMC, TMNA, TMS, TEMA, TMMC, and the Dealership in an amount to be determined by the jury.

**COUNT V**

**(All Plaintiffs v. Defendant Medical Mutual of Ohio)**

126. Plaintiffs incorporate and reaver each and every matter and allegation set forth in the preceding paragraphs as though fully restated herein.

127. A real, present, and justiciable controversy exists between Plaintiffs and Medical Mutual concerning the existence, validity, extent, and priority of Medical Mutual's claimed subrogation and reimbursement interest in any recovery in this action, including the application of Ohio Revised Code §2323.44; Medical Mutual's share of attorney fees and expenses; which payments relate to injuries caused by the incident; Plaintiffs' right to be made whole; the construction of the policy's subrogation and reimbursement provisions pursuant to Ohio Revised Code §§2721.03 and 2721.04; and the resulting allocation of any recovery.

128. The policy of insurance is in Medical Mutual's possession and will be produced in discovery, and for that reason it is not attached to this Complaint.

129. Speedy relief is necessary because Medical Mutual's claimed interest attaches to any judgment or settlement in this action.

130. Medical Mutual is named as a party defendant pursuant to Ohio Revised Code §2721.12(A) so that its claimed interest may be adjudicated in this action and it will be bound by the judgment.

131. Plaintiffs are entitled to a declaration pursuant to Ohio Revised Code §§2721.02 through 2721.06 of the parties' respective rights with respect to Medical Mutual's claimed interest, and to further relief pursuant to Ohio Revised Code §2721.09 as necessary to effectuate the declaration.

WHEREFORE, for Counts I and II, Plaintiff Ranna Zaboura prays for judgment against Defendants Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing Canada Inc., AAG-Cleveland, L.L.C. d/b/a Metro Lexus, and Metro Lexus, individually and collectively, jointly and severally, for compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), for a determination that her injuries fall within Ohio Revised Code §2315.18(B)(3), and for her costs herein, attorney fees, and pre- and post-judgment interest. For Count IV, Plaintiffs pray for judgment against the same Defendants, individually and collectively, jointly and severally, for punitive damages pursuant to Ohio Revised Code §2307.80 in an amount to be determined by the jury, together with attorney fees. For Count III, Plaintiff George Zaboura prays for judgment against the same Defendants, individually and collectively, jointly and severally, for compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), as well as his costs herein. For Count V, Plaintiffs pray for a declaration pursuant to Ohio Revised Code Chapter 2721 of the existence, validity, extent, and priority of any subrogation or reimbursement interest of Defendant Medical Mutual of Ohio in any recovery in this action, including all reductions and limitations required by Ohio Revised Code §2323.44, the policy, and Ohio law, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Kyle B. Melling*

**KYLE B. MELLING (#0091208)**
**JAMES A. LOWE (#0002495)**
**Lowe Trial Lawyers**
5875 Landerbrook Drive, Suite 220
Cleveland, OH 44124
Tel: (216) 781-2600 / Fax: (216) 781-2610
Email: Kyle@LoweFightWin.com
Email: James@LoweFightWin.com
*Counsel for Plaintiffs*

**W. CRAIG BASHEIN (#0034591)**
**Bashein & Bashein Co., L.P.A.**
50 Public Square, Terminal Tower, 35th Floor
Cleveland, Ohio 44113
Tel: (216) 771-3239
Email: cbashein@basheinlaw.com
*Co-Counsel for Plaintiffs*

## JURY DEMAND

A trial by jury is demanded on all issues.

Respectfully submitted,

*/s/ Kyle B. Melling*

**KYLE B. MELLING**
*Counsel for Plaintiffs*